LOTTINGER, Judge.
This suit was brought by the State of Louisiana, through the Attorney General, seeking to have a contract to construct a civic center-arena, exhibit hall and theater declared null and void. The contract in question was executed by the City of Baton Rouge and the Parish of East Baton Rouge with Pittman Construction Company, Inc., as general contractor. The Trial Court rendered a judgment in favor of defendants upholding the validity of the contract and dismissed the plaintiff’s suit.
The Attorney General did not appeal the decision of the Trial Court, however, this appeal has been taken by William M. Duke and the corporation of which he is president, Somar, Inc., under the provisions of LSA-C.C.P. Art. 2086 which provides that a person who could have intervened in the Trial Court may appeal, whether or not any other appeal has been taken.
The appellant argues that the specifications which were attached to the bid proposals prepared by the defendant, City of Baton Rouge and Parish of East Baton Rouge, contained a closed specification in violation of LSA-R.S. 38:2295, and that the alleged closed specification does not comply with the statutory requirements relating to closed specifications as are contained in LSA-R.S. 32:2290, et seq. Appellant, therefore, contends that the contract is null and void.
The appellant contends that the Trial Judge erred generally in refusing to nullify a public contract after specifically finding that the closed specification laws of the State of Louisiana had been violated, generally in refusing to nullify the contract under the facts as found, and in granting summary judgment.
As regards the specification of error concerning summary judgment, it is true that the matter was heard by the Trial Court on a motion for summary judgment, however, prior to the commencement of the trial, all parties in the Trial Court agreed that after hearing all of the testimony and viewing all of the evidence, the Court would dispose of the entire matter. Considering that this was agreed to by all parties at the trial level, we find no error on the part of the Trial Judge in disposing of this matter in the manner in which he did.
The specifications which are in controversy in this law suit call for two high voltage circuit breakers, which are to be installed in the Central Mechanical Room in the Civic Center Complex. The specifications, as attached to the bid proposals prepared by the city and parish, contain the following:
“The electrical subcontractor shall furnish and install two sections of primary switchgear in the Central Mechanical Building. Switchgear shall be compatible with and shall be by same manufacturer as switchgear to which it shall be connected. Manufacturer shall be the Square D Company.”
The record points out that it was the appellant, Mr. Duke, along with others, who pointed out to the architects and the electrical engineer that he felt that the above specification, to the effect that Square D equipment be used, was prohibited by the closed specification law and precluded other manufacturers of like equipment from bidding. These assertions were made at a pre-bid conference held more than a week prior to the time set for the receipt of sealed bids to which all contractors, subcontractors, suppliers, interested parties and any interested citizens were invited or free to attend, including Mr. Duke, who attended. It was argued that an advantage existed of Square D Company being able to quote a lower price to one electrical subcontractor than another and thereby affect the final outcome of the bidding.
It was immediately concluded by the supervising architect and the electrical engineer that such an unfair advantage did *663 exist and would have to be removed. Two alternative solutions were offered, (1) the changing of these specifications from a designation of the use of Square D Company equipment to an item or allowance in the amount of $52,908.00 or in the alternative (2) making the item an “owner supplied” item under, separate bid letting. It was determined at the conclusion of the meeting that the best solution to the problem would be to use the “allowance” procedure. For some unknown reason, Mr. Duke left the meeting early and testified that he thought the “owner supplied” solution had been agreed to. No evidence was presented by the plaintiff that any other person present, other than Mr. Duke, who left early, was of such an opinion.
The proposed change as an addendum was issued and mailed one week prior to the date set for the reception of bids, and contained the following:
“The two high voltage circuit breakers, which must be installed in the switchgear located in the Central Mechanical Room now under contract, shall be furnished and installed by the successful electrical subcontractor for the Arena and Exhibit Hall. These devices shall be purchased from wholesaler by the successful subcontractor at a cost of $52,908 not including sales taxes, or subcontractor’s profit or overhead.”
The issuance of the addendum was well within the statutory time period allowed by LSA-R.S. 38:2211(B).[1]
It is argued by the appellant that the addendum did not correct the defect of a closed specification in that the addendum makes reference only to the “two high voltage circuit breakers” rather than “switchgear” as found in the original specification. He argues that a circuit breaker is part of the switchgear and that that mere use of the terminology “circuit breaker” did not delete from the original specification the fact that the manufacturer shall be Square D Company. Mr. Duke testified that he believed that the addendum was intended to delete the entire switchgear, and not just the two circuit breakers, and further testified that it was simply not worded properly.
The Trial Judge in his written reasons for judgment found as a matter of fact, to-wit:
“Mr. L. E. Miremont, the architect, and Mr. Levy, the electrical engineer, testified that they intended that Addendum No. 2 supersede the prior specification for the furnishing of the switchgear for the Arena and Exhibit Hall. They testified that the language of Addendum No. 2 was carefully prepared by them in consultation with the Project Architect, with the approval of the City-Parish Government, and that all parties understood and intended that the language of Addendum No. 2 eliminate the closed specification in the original specifications by eliminating the reference to the switchgear having to be manufactured by the Square D Company and to substitute in its place the ‘allowance.’ It was further established by a preponderance of the evidence that all parties at the pre-bid conference understood that Addendum No. 2 would be issued to eliminate reference to the Square D Company, and to eliminate the closed specification and substitute the allowance. Mr. F. G. LeBlanc, Jr., representing Saia Electric, the electrical sub-contractor, testified *664 that he and his company fully understood the language of Addendum No. 2 to eliminate reference to the Square D Company equipment and substitute therefor the allowance ; ■ that in fact his company had received five bids from five supply houses in which each of the supply houses uniformly treated the switchgear item in question as an allowance, which to the Court is proof that competitive bidding was not precluded in violation of the law.”
The Trial Judge found that the original specification was violative of the closed specification law, even though the project specifications did contain the following language, to-wit:
“Materials and equipment shall conform in all respects to the requirements set forth in these specifications and the accompanying drawings. However, where-ever a product is identified by name, equal products which meet the Architect’s written approval may be used.”
We are of the opinion, however, that there is no need for us to answer the question as to whether the original specification was violative of the closed specification law, for we must look to the specifications and the language therein contained at the time bids were received, and not at some date prior to that.
It was at that point that the much discussed addendum had already been issued and as the evidence points out the vast majority of those individuals and businesses concerned, excluding Mr. Duke, were of the opinion and understanding that it was the intention of everyone to eliminate any reference to the Square D Company. Even though the language of the addendum may not have been properly drawn so as to show exactly what was intended, there was no misunderstanding as far as the bidders were concerned. Even Mr. Duke admitted the intention of the addendum.
The Supreme Court in Stevens Concrete Pipe & Products, Inc. v. Burgess, 252 La. 136, 209 So.2d 733 (1968) held:
“The command of the closed specification law is clear and unequivocal. This recent statute, Act 40 of 1965, which is incorporated into our Revised Statutes as R.S. 38:2290-38:2296, was unquestionably designed, as the Court of Appeal [Stevens Concrete Pipe & Products, Inc. v. Burgess, 202 So.2d 498 (La.App. 1st Cir. 1967), rehearing denied (1967)] properly found, to supplement our low bidder statute, R.S. 38:2211 et seq., to assure competitive bidding which heretofore could be stifled by the use of closed specifications excluding products of equal utility and appearance.”
Under the facts as found by the Trial Judge, we are of the opinion that at the time that bids were received on the contract in question, competitive bidding had not been stifled,[2] the language complained of did not constitute a closed specification, and there are no grounds presented for declaring the contract null and void.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant to the extent provided by law.

Affirmed.

ELLIS, J., dissents with reasons.

. LSA-R.S. 38:2211 (B) provides:
“No public corporation or political subdivision of the state shall issue or cause to be issued any addenda modifying plans and specifications within a period of seventy-two hours prior to the advertised time for the opening of bids, excluding Saturdays, Sundays and any other legal holidays. If the necessity arises to issue an addendum modifying plans and specifications within the seventy-two hour period prior to the advertised time for the opening of bids, then the opening of bids shall be extended exactly one week, without the requirement of readvertising as provided by Subsection (A) of this section.”

. Three bids were received: Pittman Construction Company, Inc., $17,594,000; W. M. Heroman and Gervais Favrot, $19,986,000; and J. A. Jones, $20,698,000. The difference between the low bidder and the next lowest bidder was $2,392,000. It would seem obvious that an item of $52,908 had no apparent effect on the outcome of the bidding, and certainly did not play any part in stifling competition.