430 So.2d 1310 (1983)
Francis R. HENNING
v.
Louis CARRIER, et al.
No. 82 CA 0912.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 10, 1983.
*1311 Frederick P. Heisler, Heisler, Wysocki & DeLaup, New Orleans, for plaintiff & appellee.
William T. Reeves, Jr., William J. Guste, Jr., Atty. Gen.'s Office, Baton Rouge, for defendants & appellants.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This appeal presents the question of whether the disability of Francis R. Henning, a municipal police officer employed by the City of Gretna, is the result of an "injury in the line of duty" under La.R.S. 33:2376B(1) or a "continued illness" under La.R.S. 33:2376B(2). The Board of Trustees of the Municipal Police Employees Retirement System awarded plaintiff disability benefits for a "continued illness." Plaintiff applied for a reconsideration, asking the Board to classify his disability as one resulting from an "injury in the line of duty" so as to provide plaintiff a higher disability benefit. After reconsideration, the Board refused to change the classification of the disability. Plaintiff sought judicial review in the district court, naming the members of the Board of Trustees as defendants. The district court overturned the determination of the Board, awarding plaintiff disability benefits for a duty-related injury under La.R.S. 33:2376B(1), and making the corresponding increase in disability benefits retroactive to November 16, 1978. Defendants have appealed suspensively.
Plaintiff, who had a long history of heartrelated health problems, suffered a myocardial *1312 infarction while on duty on January 19, 1976. After recovering, plaintiff attempted to resume his duties, with sporadic results. He applied for disability benefits on July 28, 1978. Plaintiff intended to apply for benefits for disability resulting from a duty-related injury; however, due to a clerical error, the application stated that the disability was not service-connected.
By letter of September 26, 1978, plaintiff was informed that the Board of Trustees had approved the disability benefits for which he had applied. Alarmed at the small amount of such benefits, plaintiff contacted the City of Gretna. The City forwarded a letter to the Board, advising the Board that plaintiff's application had contained a clerical error, that plaintiff and the City had intended that plaintiff receive disability benefits for an injury in the line of duty, and asking the Board to correct the mistake. Subsequently, plaintiff's attorney directed a letter to the board on plaintiff's behalf, requesting the Board to reconsider its position with respect to the status of plaintiff's disability.
The Board acknowledged receipt of the letter from plaintiff's attorney, and invited plaintiff to attend a Board meeting on November 16, 1978 to "present his appeal." Plaintiff alleges that he and his counsel did attend this meeting, but neither were given an opportunity to be heard.
Ultimately, the Board decided not to change the status of plaintiff's disability. The entire record at the administrative level was filed in the record of the district court. At the hearing in the district court, plaintiff was allowed to testify, over the objection of counsel for the retirement system. The district court ordered that a proces verbal of this testimony be submitted. The matter was taken under advisement and ultimately judgment was rendered in favor of plaintiff, overturning the decision of the Board and granting plaintiff benefits for disability resulting from an injury in the line of duty. This suspensive appeal followed.

SPECIFICATIONS OF ERROR
Defendants-appellants, the Board of Trustees of the Municipal Police Employees Retirement System, assign the following specifications of error:
1. The trial court erred by not applying the provisions of the Administrative Procedure Act (La.R.S. 49:950-970) to this case and specifically the provision found in section 964 concerning judicial review.
2. The trial court erred in holding that the plaintiff-appellee was entitled to a disability benefit based upon "an injury received in the line of duty" rather than a disability benefit based upon a "continued illness."
3. The trial court erred in holding that the plaintiff-appellee could testify at the hearing in the trial court and in ordering a proces verbal of said testimony to be filed in the record.

SPECIFICATIONS OF ERROR NOS. 1 AND 3
Defendants-appellants argue that the Municipal Police Employees Retirement System, created by La.R.S. 33:2371 et seq. (Act 189 of 1973), is an "agency" for purposes of the Administrative Procedure Act.
In Buras v. Board of Trustees of Police Pension Fund of City of New Orleans, 367 So.2d 849 (La.1979), the court held the Administrative Procedure Act applied to proceedings of the board of trustees of the police pension fund of the city of New Orleans. The basis for this decision was a determination that the board was an "agency" under La.R.S. 49:951(2), which read at the time Buras filed for benefits:
"[E]ach state board, commission, or department which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, *1313 committee, or officer thereof and the courts." (emphasis added).
This statute was unchanged at the time Mr. Henning filed for disability benefits.
The court provided the following reasoning for its holding in Buras:
"The board of trustees of the police pension fund of the city of New Orleans derives its existence from an act of the legislature. [La.R.S. 33:2281 et seq.] It awards or denies pensions pursuant to the authority granted it by the legislature. It is therefore apparent that the board of trustees of the police pension fund of the city of New Orleans is a state board which formulates or issues decisions pursuant to the statutes of Louisiana and, as such, is an `agency' within the contemplation of the Administrative Procedure Act. Hence, the Administrative Procedure Act is applicable to proceedings of the board." 367 So.2d at 852 (footnote omitted, emphasis placed in original opinion).
We agree that the Board of Trustees of the Municipal Police Employees Retirement is an "agency" under La.R.S. 49:951(2); thus, the provisions of the Administrative Procedure Act must apply to the actions of the Board wherever possible.
We do not agree, however, that Section 964 of the Act, dealing with judicial review, can apply to the instant controversy.[1] Section 964 reads in pertinent part, "A person *1314 who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under this Chapter..." Under La.R.S. 49:951(1), an "adjudication" is defined as an agency process for the formulation of a decision or order. "Decision" and "order" are defined in La. R.S. 49:951(3) as follows:
"`Decision' or `order' means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing." (emphasis added).
In Delta Bank & Trust Company v. Lassiter, 383 So.2d 330 (La.1980), the Supreme Court stated with regard to the Administrative Procedure Act:
"An adjudication is a proceeding resulting in an order or decision. A decision or order is, for purposes of the act, a disposition required by constitution or statute to be made only after notice and a hearing. Therefore, unless there is some provision in the constitution or statutes requiring a hearing, an agency disposition is not a `decision' or `order' as defined for purposes of the act. And unless a proceeding results in a decision or order, it is not an adjudication as defined in the act. It is apparent, then, that an adjudication for purposes of the act means an agency proceeding that results in a disposition that is required to be made (by constitution or statute) after notice is given and a hearing is held. Unless some statute or the constitution require a hearing and notice, an agency action is not an adjudication for purposes of the act." 383 So.2d at 333
Plaintiff-appellee correctly points out that nowhere in the chapter of the Revised Statutes creating the retirement system involved herein (and particularly in La.R.S. 33:2376)[2] is notice and a hearing before the Board mandated for disability applicants. Thus, since hearing and notice *1315 are not required statutorily, and the issue of whether due process would require same is not now before us, the determination of the Board in the instant case was not "a final decision or order in an adjudication proceeding" as per definition of those terms in the Administrative Procedure Act; therefore La.R.S. 49:964 does not govern judicial review of the Board's determination of plaintiff's disability status. See: Delta Bank & Trust Company, supra at 335 (footnote 8); and Hagood v. Pickering, 385 So.2d 405 at 408 (La.App. 1st Cir.1980), on remand 392 So.2d 130 (La.App. 1st Cir.1980).
Despite the inapplicability of La.R.S. 49:964, the right of judicial review of administrative proceedings is presumed to exist, inasmuch as such review is necessary to the validity of administrative proceedings under our legal system and traditions. Louisiana Constitution of 1974, Art. I, Sec. 22; Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971). In Delta Bank & Trust Company, supra, the Supreme Court commented on the scope of such judicial review as follows:
"The scope of review of administrative agencies in the performance of a discretionary duty is restricted to a determination of whether the agency's action can be deemed to have been unreasonable, arbitrary or capricious, or whether it *1316 amounted to an abuse of power. Kansas City Southern Ry. Co. v. Louisiana Public Service Commission, 254 La. 160, 223 So.2d 132 (1969); Stevens Concrete Pipe & Products, Inc. v. Burgess, 252 La. 136, 209 So.2d 733 (1968). In the absence of a showing of such an abuse of discretion it is not the province of the judiciary to substitute its judgment for that of the administrative agency or to interfere with the agency's exercise of its discretion. Stevens Concrete Pipe & Products, Inc. v. Burgess, supra; Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959)." 383 So.2d at 335-336.
We are of the opinion that since La.R.S. 49:964 is inapplicable, there is no prohibition against the trial court's adducing evidence intended to show the arbitrariness or unreasonableness of the Board's disposition, since the district court proceeding was not "judicial review" as per the Administrative Procedure Act. Delta Bank & Trust Company, supra; Bowen, supra; Times Picayune Publishing Corporation v. City of New Orleans, 316 So.2d 147 (La. App. 4th Cir.1975).
For these reasons, defendants-appellants' specifications of error Nos. 1 and 3 are without merit.

SPECIFICATION OF ERROR NO. 2
Defendants-appellants argue that the trial court erred in holding plaintiff was entitled to benefits for an injury in the line of duty.
We have found no cases involving this issue dealing with the Municipal Police Employees Retirement System; however, inasmuch as the statute for the State Police Retirement System that delineates disability classifications[3] is almost identical, we are guided by cases devolving thereunder. In Guillory v. State Police Retirement Board, 402 So.2d 161 (La.App. 1st Cir.1981), writ den. 404 So.2d 1260 (La.1981), this court held that a state police officer whose heart condition was aggravated over a period of many years partly as a result of his employment was entitled only to disability retirement for a continued illness. In Guillory we stated:
"There must be a cut-off point, however, at which an injury is so insubstantially, slowly or imperceptibly received or sustained as a result of the employment that it is not an `injury' in and of itself, but a `continued illness.' An aggravation of a preexisting condition in cases of more precipitous development of the illness falls under (B)(2) as an `injury', and in cases in which the development was more gradual and less directly related to employment (or not related at all) falls under (B)(3) as a `continued illness'." 402 So.2d at 163.
This language was followed in Darbonne v. Louisiana State Police Retirement Board, 408 So.2d 452 at 454 (La.App. 1st Cir.1981).
In the instant case, plaintiff's physicians concluded plaintiff was totally and permanently disabled due to the following medical problems and diagnoses:
1. Angina Pectoris and dyspnea,
2. Old and recent myocardial infarctions,
3. Diabetes Mellitus, and
4. Hypertensive artesclerotic heart disease.
The medical records show that plaintiff suffered a myocardial infarction in December of 1963, a coronary insufficiency in July of 1964, another small infarction in March of 1968, and a myocardial infarction in January of 1976. After the heart attack in 1976, plaintiff attempted to return to work whenever he felt like so doing and could go home at will. This situation prevailed until plaintiff applied for disability benefits on July 28, 1978.
Dr. R.T. Ribando expressed in a letter to the Board his opinion that the stress of plaintiff's occupation was a cause of strain *1317 on plaintiff's heart and was responsible for his present condition. Dr. T.R. Kilpatrick, a member of the state-wide medical disability board for all state-wide retirement systems, opined that heart attacks were caused by coronary artery obstructions of hereditary or exogenous origins, although the stresses of occupations could agitate such obstructive disease and could be the precipitating factor at the time the attack occurs. Thus, Dr. Kilpatrick opined, heart attacks are the result of extended illnesses and are not injuries related to one's occupation.
Although several medical problems contributed to plaintiff's disability, we cannot ignore the fact that plaintiff was able to work full-time without hindrance prior to the January 16, 1976 heart attack, despite his existing medical problems. After the myocardial infarction of January 16, 1976, plaintiff was never again able to work fulltime, could work only sparingly, and required special permission to go home whenever he felt weak. Thus, following Guillory, supra, the heart attack of January 16, 1976 was a precipitous development which marked the aggravation of a pre-existing condition and thus falls into the category of an "injury" under La.R.S. 33:2376B(1).
That plaintiff suffered a myocardial infarction in January of 1976 and never worked full-time thereafter was known to the Board when it made its disposition. In light of the fact that Dr. Ribando maintained that job-related stress contributed to plaintiff's attack, and Dr. Kilpatrick, although maintaining that heart attacks are not injuries, acknowledged that job stress can be the precipitating factor in causing an infarction, we find that the Board abused its discretion in awarding plaintiff benefits for a "continued illness." Certainly a heart attack suffered while on the job and from which a claimant is never fully able to recover is a precipitous setback to one's health and, under Guillory, supra, is an "injury received in the line of duty." We agree with the trial judge that plaintiff's disability was caused by a job-related injury and that he is entitled to disability benefits under La.R.S. 33:2376B(1).

DECREE
Therefore, for the above and foregoing reasons, the judgment of the district court overturning the determination of the Board of Trustees of the Municipal Police Employees Retirement System and awarding plaintiff, Francis R. Henning, disability benefits pursuant to La.R.S. 33:2376B(1), is hereby affirmed. All costs of this appeal, in the amount of $218.20 are assessed to defendants-appellants.
AFFIRMED.
NOTES
[1] La.R.S. 49:964 reads:

"A. A person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under this Chapter whether or not he has applied to the agency for rehearing, without limiting, however, utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.
"B. Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after mailing of notice of final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record.
"C. The filing of the petition does not itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms.
"D. Within thirty days after the service of the petition, or within further time allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record.
"E. If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.
"F. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.
"G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues."
[2] At the time Mr. Henning applied for disability retirement benefits, July 28, 1978, La.R.S. 33:2376 read as follows:

"§ 2376. Disability retirement
"A. Upon the application of a member to his employer, any member who has at least five years of creditable service may be retired by the board of trustees, not less than thirty and not more than ninety days next following the date of filing such application, on a disability retirement allowance, if the medical board, after a medical examination that certifies that he is physically incapacitated for further gainful employment, that such incapacity is likely to be permanent, and that he should be retired. In case of disability for mental or nervous disorders, the board shall have the absolute and final authority to determine that the applicant is incapacitated for further gainful employment and that he should be retired; provided, however, that the application of this Section shall not be applicable to persons otherwise eligible to retire.
"B. Upon retirement for disability, a member shall receive a retirement allowance if he has attained the age of fifty years; otherwise, he shall receive a disability benefit which shall be computed as follows:
(1) In case of total disability of any member resulting from injury received in line of duty, even though he has less than five years of creditable service, a monthly pension of sixty percent of the salary being received at the time of the disability shall be paid to the disabled employee.
(2) Any member of the system who has become disabled or incapacitated because of continued illness or as a result of any injury received, even though not in line of duty, and who has five years of creditable service, but is not eligible for retirement under the provisions of R.S. 33:2375 may apply for retirement under the provisions of this Section.
"C. The applicant shall accompany his application with certificates from at least three physicians, certifying that he is unable to perform the duties required of him by the head of the division.
"D. Thereafter, upon the recommendation of the head of the division and the approval of the board, the employee shall be retired on seventy-five percent of the retirement salary to which he would be entitled under R.S. 33:2375 if he were eligible thereunder. Once each year during the first five years following retirement of a member on a disability retirement allowance, and once in every three-year period thereafter, the board of trustees may, and upon his application shall, require any disability beneficiary who has not yet attained the age of sixty years to undergo a medical examination, such examination to be made at the place of residence of said beneficiary or other place mutually agreed upon, by a physician or physicians designated by the board of trustees. Should any disability beneficiary who has not yet attained the age of sixty refuse to submit to at least one medical examination in any such year by a physician or physicians designated by the board of trustees, his allowance may be discontinued until his withdrawal of such refusal, and should his refusal continue for one year all his rights in and to his pension may be revoked by the board of trustees.
"E. Should the medical board report and certify to the board of trustees that such disability beneficiary is engaged in or is able to engage in a gainful occupation paying more than the difference between his retirement allowance and the average final compensation, and should the board of trustees concur in such report, then the amount of his pension shall be reduced to an amount, which, together with his annuity and the amount earnable by him, shall equal the amount of his average final compensation. Should his earning capacity be later changed, the amount of his pension may be further modified; provided, that the new pension shall not exceed the amount of the pension originally granted nor an amount, which, when added to the amount earnable by the beneficiary together with his annuity, equals the amount of his average final compensation. A beneficiary restored to active service at a salary less than the average final compensation shall not become a member of the retirement system.
"F. Should a disability beneficiary under the age of fifty-five be restored to active service at compensation not less than his average final compensation, his retirement allowance shall cease, he shall again become a member of the retirement system, and he shall contribute thereafter at the same rate he paid prior to disability. Any such prior service certificate on the basis of which his service was computed at the time of his retirement shall be restored to full force and effect, and in addition, upon his subsequent retirement he shall be credited with all his service as a member; but should be restored to active service on or after the attainment of the age of fifty years his pension upon subsequent retirement shall not exceed the sum of the pension which he was receiving immediately prior to his last restoration and the pension that he would have received on account of his service since his last restoration had he entered service at the time as a new entrant.
"G. Should a member cease to be an employee except by death or retirement under the provisions of this Sub-Part, he shall be paid the amount of the accumulated contributions standing to the credit of his individual account in the Annuity Savings Fund.
"H. Should a member die before retirement and not be entitled to survivors' benefits, the amount of his accumulated contributions standing to the credit of his individual account shall be paid to his estate or to such person as he shall have nominated by written designation, duly executed and filed with the board of trustees.
"I. Should a member who is on disability retirement die and leave a surviving spouse, the surviving spouse shall receive a benefit of two hundred dollars a month."
Added by Acts 1973, No. 189, § 1.
Amended by Acts 1975, No. 377, § 1; Acts 1976, No. 603, § 4; Acts 1977, No. 601, § 1.
[3] See La.R.S. 40:1428B(2) and B(3).