FORET, Judge.
Plaintiff, George Rue, brought this action for judicial review of a decision made by defendant, the Board of Trustees of the City of Alexandria Employees Retirement System, denying his application for disability retirement benefits. The trial court rendered judgment in favor of defendant, upholding the Board’s decision denying disability retirement benefits to plaintiff. Plaintiff appealed to this Court and we reversed the judgment of the trial court, finding that the Board had failed to comply with Act 459 of 1948, as amended. We remanded the case to the trial court with instructions that it order the Board to make a determination of plaintiff’s application in compliance with the applicable provisions of the act. See Rue v. Board of Trustees of the City of Alexandria Employees Retirement System, 437 So.2d 1167 (La.App. 3 Cir.1983), writ denied, 442 So.2d 452 (La.1983). In accordance with our opinion and the instructions of the trial court, the Board reconsidered plaintiff’s application for disability benefits. Once again the Board denied plaintiff's application. Plaintiff sought judicial review of the Board’s decision and the trial court again rendered judgment in favor of the Board, upholding its decision to deny disability retirement benefits to plaintiff. Plaintiff now appeals this decision and raises several issues:
(1) Whether plaintiff is entitled to disability retirement benefits and,
*273 (2) Whether the disability retirement benefits are subject to an offset representing the amount which plaintiff has received and will receive in worker’s compensation benefits.
FACTS
Plaintiff was employed in various positions for approximately eighteen years by the gas department of the City of Alexandria. In 1979, he was promoted to the position of cathodic protection technician. This position was of a supervisory nature. Plaintiff did, however, occasionally perform some heavy lifting and other strenuous work. As a cathodic protection technician, plaintiff was in charge of a crew of two to five men. This crew was charged with the work of placing anodes on the gas lines in order to prevent corrosion. On occasion, the crew also repaired leaks in the gas lines.
Plaintiff injured his back on May 8, 1981, in a work-related accident. Plaintiff was taken by his foreman to Dr. Francis Brian, who treated him conservatively and eventually referred him to John Patton, a neurosurgeon. Dr. Patton performed a myelo-gram on November 1, 1981, which showed a bulging disc in plaintiff’s back. Dr. Patton recommended surgery but plaintiff refused. Dr. Patton then referred plaintiff back to Dr. Brian.
The Home Indemnity Company had been paying plaintiff worker’s compensation benefits since his accident, but on December 15, 1981, it stopped these payments. Plaintiff filed suit to recover worker’s compensation benefits for total and permanent disability. Subsequently, on May 17, 1982, plaintiff applied for disability retirement benefits with defendant Board. When plaintiff’s application was denied, he brought an action seeking judicial review of the Board’s decision.
The trial court ordered the consolidation of the two actions. On December 3, 1982, the trial court rendered judgment on plaintiff’s claim for worker’s compensation benefits, finding plaintiff to be totally and permanently disabled. No appeal was taken from this judgment. On January 3, 1983, the trial court rendered judgment rejecting plaintiff’s demand with respect to disability retirement benefits. Plaintiff appealed the trial court’s judgment to this Court. We reversed, finding that the Board had failed to comply with the provisions of Act 459 of 1948, as amended, which act had created the Board and the retirement system it managed. We remanded with instructions that the trial court order the Board to again make a determination of plaintiff’s, application for disability retirement benefits but, unlike the first time, in accordance with the applicable provisions of the act. After the rendition of our decision, the Board adopted several rules designed to bring the Board’s procedure in line with the act. One of these rules established a medical board and appointed three doctors to it. The Board referred plaintiff’s application to the medical board. The members of the medical board reviewed the reports of other doctors and examined plaintiff themselves. The medical board concluded that plaintiff was not “permanently or totally disabled,” that he had “made a rational decision to live with his pain,” and could “possibly be employed in some other capacity not requiring heavy lifting or repetitive bending.” Based on this report of the medical board, the defendant Board again rejected plaintiff’s application for disability retirement benefits. The trial court again rendered judgment in favor of defendant, upholding its decision to deny plaintiff’s application. Plaintiff brought this appeal which is now before us.
PLAINTIFF’S ELIGIBILITY FOR DISABILITY RETIREMENT BENEFITS
The Board and the retirement system it manages were created by Act 459 of 1948. Section 6(1) of the act provides:
“SECTION 6. DISABILITY RETIREMENT
(1) Upon the application of a member or his employer, any member who has had at least five years of creditable ser *274 vice may be retired by the Board of Trustees not less than thirty and not more than ninety days next following the date of filing such application, on a disability retirement allowance, provided that the medical board, after a medical examination, shall certify that he is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that he should be retired." (emphasis ours)
By providing that a member may be retired on a disability retirement, it is clear that the legislature meant for the granting of disability retirement benefits to be discretionary (“... may be retired ..with the retirement system’s board. Nevertheless, the statute limits this discretion by requiring that such a retirement can only be granted if the medical board certifies that the applicant is: incapacitated from further performance of duty, that such incapacity is likely to be permanent, and that the applicant should be retired. In the present case, the medical board declined to make the necessary certification. Since the statute, in effect, prohibits the granting of a disability retirement without such a certification, the threshold question must be whether, under the circumstances, the medical board's refusal to make the necessary certification falls so short of the requisite standard that an intervention by this Court is justified.
The scope of review of an administrative agency in the performance of a discretionary duty is restricted to a determination of whether the agency’s action was unreasonable, arbitrary, or capricious, or whether if was an abuse of power. Delta Bank & Trust Company v. Lassiter, 383 So.2d 330 (La.1980); Henning v. Carrier, 430 So.2d 1310 (La.App. 1 Cir.1983), writ denied, 435 So.2d 429 (La.1983). We find that the medical board’s decision not to certify that plaintiff was entitled to retirement was neither an abuse of power nor unreasonable, arbitrary, or capricious.
Plaintiff’s position as a cathodic protection technician in the gas department of the City of Alexandria was a supervisory one. Although there was testimony that plaintiff occasionally helped out with heavy lifting and other strenuous work, it was not disputed that he was under no obligation to do so. It seems that the most strenuous requirement of plaintiff’s employment was that he climb down into the holes his crew had dug in order to check the placement of the anodes. Of the six physicians who examined plaintiff, only one, Dr. Francis Brian, thought that plaintiff was totally and permanently disabled. Although Dr. Brian was the treating physician, Dr. Patton, a neurosurgeon who also treated plaintiff, did not feel that plaintiff was disabled. He testified that he thought that plaintiff could perform any work that did not require heavy manual labor, that is, the lifting of more than 25 to 30 pounds on a repetitious basis, provided that the work did not require him to bend over. The three members of the medical board, Drs. From, Buckalew, Garcia-Ramirez, all agreed with this finding of Dr. Patton. Dr. Purdue, an orthopedic surgeon, testified that he did not think that plaintiff’s symptoms were that severe and that he felt that plaintiff was able to perform his duties as a cathodic protection technician.
The overwhelming weight of medical opinion was that plaintiff was at most incapable of performing heavy manual labor. A review of the record shows that plaintiff’s work did not require him to perform such labor. Although it had been customary for plaintiff to help out with heavy lifting and other strenuous work from time to time, there was no dispute that this was not a requirement of his job and that he had authority to order his crew to perform such labor. The decision of the medical board not to certify that plaintiff was entitled to retirement was not, in light of the evidence, unreasonable, arbitrary, or capricious, nor was it an abuse of power. Under the act, the retirement system board could not grant plaintiff disability retirement benefits absent the medical board’s certification. Accordingly, we find that the trial court was correct in its decision not to overturn the retirement board’s decision to *275 deny disability retirement benefits to plaintiff.
In view of our decision with respect to plaintiffs eligibility for disability retirement benefits, there is no need for us to consider whether the retirement system would be entitled to a setoff for worker’s compensation benefits received by plaintiff.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are to be paid by plaintiff-appellant, George G. Rue.
AFFIRMED.