EDWARDS, Judge.
This case presents the question of whether the disability of Lee R. Darbonne, a state police officer, is the result of an “injury received in the line of duty” under LSA-R.S. 40:1428(B)(2) or a “continued illness” under LSA-R.S. 40:1428(B)(3). Application of (B)(3) will result in retirement benefits fixed at 50% of average salary whereas (B)(2) provides benefits of 75% of average salary. The State Police Retirement Board and the district court both concluded that the retired officer’s disability was covered by the provisions of (B)(3). We affirm.
Appellant retired from his job as a Louisiana State Trooper with over fifteen years of service credit. Darbonne is a thirty-six year old male, standing approximately six feet tall and weighing approximately 244 pounds. He suffers from a hiatal hernia, gout, modest hypertensive vascular disease, and has a history of nervousness. Appellant has had a history of obesity for several years and underwent an intestinal bypass operation in November of 1977.
On December 6, 1979, appellant filed an application with the Board of Trustees of the Louisiana State Police Retirement System (“Board”). Appellant sought disability retirement benefits of 75% of his average salary, pursuant to LSA-R.S. 40:1428(B)(2). On February 21, 1980, the Board granted appellant a disability retirement based on LSA-R.S. 40:1428(B)(3). An appeal of this decision was taken by appellant on March *453 10, 1980. The Board acting on appellant’s appeal, affirmed its original decision.
Appellant then filed suit in the Nineteenth Judicial District Court, seeking judicial review of the Board’s decision pursuant to LSA-R.S. 49:964. After a hearing on the matter, the trial court affirmed the Board’s action. Appellant now appeals the judgment of the district court.
On February 4, 1980, appellant was examined by the Board’s physician, Dr. Guy H. Riché, Jr. In his report, Dr. Riché concluded that while appellant was not totally disabled for all types of work, he was totally disabled from performing his normal duties as a state trooper. With regard to the cause of Darbonne’s condition, Dr. Riché’s report stated: “I do not feel that he has any injury and further, that none of his diagnoses are due to or caused by his employment.” Dr. Riché also noted that appellant’s job “seems to create a degree of stress which aggravates his symptoms... . ”
Additionally, Dr. D. J. Leblanc, appellant’s personal physician, submitted a letter to the Board, in which he expressed his opinion that appellant, mostly due to stress, was physically unable to perform the duties associated with his job.
After the Board’s initial decision on the matter, appellant was examined by a second Board physician, Dr. Hulon Lott. Dr. Lott concluded that appellant was not physically disabled from performing his normal duties but that job stress had made him emotionally unstable.
Appellant’s disability is not at issue. The Board concedes that appellant is totally disabled for purposes of LSA-R.S. 40:1428. What is disputed is whether appellant’s disability is the result of an “injury received in the line of duty” or a “continued illness” as those terms are used in the statute.
Since appellant’s application for disability retirement benefits was filed on December 6, 1979, the version of LSA-R.S. 40:1428 as enacted by Act 727 of 1978 governs the present case. Guillory v. State Police Retirement Board, 402 So.2d 161 (La.App. 1st Cir. 1981), writs refused, 404 So.2d 1260 (La.1981). This statute provides, in pertinent part, as follows:
“B. The board of trustees shall award disability benefits to eligible members who have been officially certified as disabled by the State Medical Disability Board. The disability benefit shall be determined as follows:
(1) In cases of partial disability from injury received in the line of duty, a monthly pension in the discretion of the board of trustees of not less than the amount the officer would have received, disregarding age and years of service requirements, a pro rata portion of the minimum benefit if the years of service are less than the minimum required for retirement, had he retired under authority of R.S. 40:1426 or the date of this disability retirement, and of not more than seventy-five percent of his average salary, shall be paid to the disabled officer under the provisions of this Subpart.
(2) In case of total disability resulting from injury received in the line of duty, a monthly pension of seventy-five percent of his average salary shall be paid to the disabled employee under the provisions of this Subpart.”
(8) Any sworn, commissioned, law enforcement officer of the division of state police who is a member of the system who has become totally disabled or incapacitated because of continued illness or as a result of an injury received, even though not in the line of duty, but is not eligible for retirement under the provisions of R.S. 40:1426 may apply for retirement under the provisions of this Subsection. The employee shall be retired at thirty percent of his average salary for five or more years but less than ten years of service credit, forty percent of his average salary for ten or more years but less than fifteen years service credit, fifty percent of his average salary for fifteen or more years but less than twenty years service credit, and sixty percent of his average salary for twenty years and over service credit.”
Subsection (B)(2) provides disability benefits of seventy-five percent of the average *454 salary whenever the disability results from an injury received in the line of duty. Subsection (B)(3) provides disability benefits in a lesser amount, based upon length of service (fifty percent of average salary in Dar-bonne’s case), whenever the disability results from a continued illness or injury received, even though not in the line of duty.
LSA-R.S. 40:1428 provides no definition of the terms “injury” and “continued illness.” In Guillory v. State Police Retirement Board, supra, this court considered the meaning of these terms as used in the statute:
“There must be a cut-off point, however, at which an injury is so ^substantially, slowly or imperceptibly received or sustained as a result of the employment, that it is not an ‘injury’ in and of itself, but a ‘continued illness.’ An aggravation of a preexisting condition in cases of more precipitous development of the illness falls under (B)(2) as an ‘injury’, and in cases in which the development was more gradual and less directly related to employment (or not related at all) falls under (B)(3) as a ‘continued illness’. We need not say precisely when (B)(3) begins to apply. Suffice it to say that a serious heart disease (accompanied by other serious medical conditions) which is aggravated over a period of many years partly as a result of the performance of one’s work as a state police officer, falls under (B)(3), not (B)(2).”
Applying this standard to the instant case, appellant’s disability is a result of “continued illness” rather than an “injury.” The medical evidence in the record indicates that appellant’s disability is a result of an assortment of diseases and medical problems (hiatal hernia, obesity, gout, modest hypertensive vascular and nervousness) which have developed and been present over a period of time. Appellant’s general health gradually worsened to the point that he became disabled from performing his duties.
Appellant argues that he sustained a mental injury as a result of on the job stress which in turn caused his physical disability. He argues that this alleged mental injury should be included within the meaning of “injury” in Subsection (B)(2). Regardless of whether or not appellant’s mental condition contributed to it, the development of his physical disability was such that it is to be considered a “continued illness” under the standards set forth in Guillory, supra.
The provisions of the Administrative Procedure Act, LSA-R.S. 49:951 et seq. govern all adjudication proceedings held by the Board, because it is an “agency” as defined by LSA-R.S. 49:951(2).[1] Buras v. Board of Trustees of the Police Pension Fund of the City of New Orleans, 367 So.2d 849 (La.1979). The Administrative Procedure Act also governs the scope of judicial review by the district court and of appeals to the appropriate circuit court of appeal. LSA-R.S. 49:964 & 965.
LSA-R.S. 49:964 G specifically defines the scope of review of judicial decisions:
“G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
*455 (5) Arbitary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.”
In the instant case, the Board concluded, as a matter of law, that appellant’s total disability is due to and caused by his continued illness as that term is used in LSA-R.S. 40:1428(B)(3). The decision of the Board is not affected by error of law nor is it manifestly erroneous. The trial court committed no error in affirming the Board’s decision.
For the foregoing reasons, the judgment of the district court, affirming the decision of the Louisiana State Police Retirement Board, is affirmed. Costs of this appeal are assessed against appellant, Lee R. Dar-bonne.
AFFIRMED.

. LSA-R.S. 49:951(2) provides:
“(2) ‘Agency’ means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts.”