ALFORD, Judge.
This is an appeal by the plaintiff, Barry A. O’Connor, from a judgment of the district court denying his petition for judicial review of a decision of the Board of Trustees of the Louisiana State Police Retirement System concluding that Sgt. O’Con-nor’s disability was due to a “continued illness”, entitling him to disability retirement benefits of 40 percent, rather than due to an injury in the line of police work, which would entitle him to disability retirement benefits of 75 percent of his average monthly salary.
The lower court held that the suit was not properly before it for judicial review under the provisions of the Administrative Procedure Act, LSA-R.S. 49:951 et seq., and did not consider the merits of Mr. O’Connor’s claim.
We believe that the court below was clearly in error in its conclusion that the appellant could not apply for judicial review of the Board’s decision under the provisions of the Administrative Procedure Act. See Leger v. State Police Retirement Board, 396 So.3d 965 (La.App. 1st Cir.1981), writ denied 399 So.2d 610 (La.1981). Since the record before us is complete, it will be unnecessary for us to remand to the district court for its consideration of the merits of the case.
The question presented is whether the total disability of Barry A. O’Connor, a state police officer is the result of an “injury received in line of duty” pursuant to LSA-R.S. 40:1428B(2) or of a “continued illness” under Subsection 1428B(3). Application of 1428B(2) provides benefits of 75% of his average monthly salary whereas under 1428B(3), his retirement benefits are fixed at 40% of his average monthly salary for a retiree with the credited service of O’Connor. The State Police Retirement Board concluded that the retired officer’s disability was covered by the provisions of LSA-R.S. 40:1428B(3). We agree and affirm the Board’s decision. We also affirm the judgment of the district court, which has the effect of denying the plaintiff’s appeal, but on a different ground. We hold, on the merits, that O’Connor’s disability is not covered by 1428B(2); his disability, we find, is because of “continued illness.”
O’Connor was employed as a state trooper for the Louisiana State Police from June 1, 1971 to April 23, 1981, when he retired. This active employment service credit of nine years, ten months, and twenty-three days, plus three years creditable military service[1], gave O’Connor total credited service in the retirement system of twelve years, ten months, and twenty-three days. Thus, O’Connor retired from his job as a Louisiana State Trooper with over 12 years of service credit. He is about 33 years old, and suffers from intermittent severe hypertensive reactions related to emotional and mental stress of his occupation. His medical history is uneventful, except for gunshot wounds to his legs and a right eye laceration from a gunshot.
By letter dated February 26, 1981, from his counsel, O’Connor applied to the Board for disability retirement benefits on the basis of LSA-R.S. 40:1428 et seq. He was examined by Dr. T.R. Kilpatrick of the State Medical Disability Board, Dr. Richard P. Strobach, and Dr. W. Curtis Wilcox. Letters and other memoranda from each of these physicians, along with other written data are contained in O’Connor’s file and made a part of the record, in particular Dr. Kilpatrick’s letter dated March 23,1981, Dr. Strobach’s letter dated February 9, 1981, Dr. Wilcox’s letters dated January 27, 1981 and April 22, 1981 and the Discharge Summary from the Seventh Ward General Hospital, Hammond, Louisiana, Dr. W.C. Wilcox. Each of the above mentioned physicians concluded that O’Connor should be considered totally and permanently medically disabled from further state police work because of his severe hypertension.
*452 Plaintiff and his counsel appeared before the Board at the meeting of April 23,1981. At that time a brief in support of O’Con-nor’s application for disability retirement was submitted.
Upon considering plaintiff’s application for disability retirement benefits, the data in his file with the retirement system, and plaintiff’s counsel’s brief and oral argument, the Board, made findings of fact and reached conclusions of law, as follows:
1. Mr. O’Connor has twelve years, ten months, and twenty-three days of creditable service, with the System.
2. Mr. O’Connor suffers from intermittent reactive severe hypertension.
3. Mr. O’Connor is totally disabled and/or incapacitated from further state police work because of continued illness, i.e. intermittent reactive severe hypertension.
4. Mr. O’Connor’s disability and/or incapacity is not caused by any injury at all, much less an injury the nature of which causes state police work to be extra-hazardous.
5. Mr. O’Connor’s average monthly salary as of April 23, 1981, is $1,907.17.
The Board of Trustees of the System concludes, as a matter of law, that Mr. O’Connor’s total disability and/or incapacity to perform further state police work is due to and caused by his continued illness, i.e. intermittent reactive severe hypertension. The Board therefore concludes that Mr. O’Connor is entitled to disability retirement benefits of forty percent of his average salary pursuant to La.R.S. 40:1428(B)(3) for a monthly benefit of $762.87. The Board specifically concludes that Mr. O’Connor’s disability is not caused by any injury as the term ‘injury’ is used in La.R.S. 40:1428.
Dr. W. Curtis Wilcox, in his letter of January 27, 1981, stated that when he examined the patient on December 19, 1980, he found O’Connor “in another hypertensive crisis.” He recommended that the police officer terminate his relationship with the State Police. In his Discharge Summary, June of 1980, Dr. Wilcox diagnosed the condition as “Reactive liable systematic hypertension,” accompanied by related conditions stemming from chronic anxiety. In his letter of April 22, 1981, Dr. Wilcox expressed the opinion that Mr. O’Connor’s “recurrent crises of life threatening reactive hypertension and incapacitating hypertensive encephalopathy are directly related to certain of his responsibilities as a peace officer for the Louisiana State Police.”
On March 18, 1981, O’Connor was examined by the Board’s physician Dr. T.R. Kil-patrick, for a disability evaluation. In his report of March 23, 1981, Dr. Kilpatrick concluded that the patient was totally and permanently medically disabled. He was of the opinion that O’Connor “is disabled for his present occupation as a state trooper because of reactive hypertension, probably on emotional basis.”
The plaintiff was examined by Dr. Richard P. Strobaeh on June 27, 1980, following a request by Dr. Curtis Wilcox. He was examined again on February 9, 1981 by Dr. Strobaeh, who recommended that because of his hypertensive episodes Mr. O’Connor should retire from the state police “for medical reasons.”
Appellant’s disability is not at issue. The Board concedes that Mr. O’Connor is totally disabled for purposes of LSA-R.S. 40:1428. What is at issue is whether appellant’s total disability is the result of an “injury received in line of duty”, or a “continued illness” as those terms are used in LSA-R.S. 40:1428.
This statute provides as follows:
A. Eligibility for disability benefits, procedures for applications for disability benefits, procedures for the certification of continuing eligibility for disability benefits, the authority of the board of trustees to modify disability benefits, and procedures governing the restoration to active service of a formerly disabled employee are specifically described and provided for in R.S. 42:702 through R.S. 42:706.
B. The board of trustees shall award disability benefits to eligible members who have been officially certified as dis *453 abled by the State Medical Disability Board. The disability benefit shall be determined as follows:
(1) In case of partial disability from injury received in the line of duty a monthly pension in the discretion of the board of trustees, of not less than the amount the officer would have received, disregarding age and years of service requirements, a pro rata portion of the minimum benefit if the years of service are less than the minimum required for retirement, and he retired under authority of R.S. 40:1426 or the date of this disability retirement, and of not more than seventy-five percent of his average salary, shall be paid to the disabled officer under provisions of this Subpart.
(2) In case of total disability resulting from injury received in line of duty, a monthly pension of seventy-five percent of his average salary shall be paid to the disabled employee under the provisions of this Subpart. These benefits shall be awarded only upon factual determination by the Board of Trustees that the injury causing the disability was an injury the nature of which causes state police work to be extra-hazardous. This determination shall be based on all relevant data and on the board members’ own individual expertise in the field of state police work, and the board shall be the sole authority to make such a determination.
(3) Any sworn, commissioned, law enforcement officer of the Division of State Police who is a member of the system who has become totally disabled or incapacitated because of continued illness or as a result of an injury received, even though not in the line of duty but is not eligible for retirement under provisions of R.S. 40:1426 may apply for retirement under the provisions of this Subsection. The employee shall be retired at thirty percent of his average salary for five or more years but less than ten years of service credit, forty percent of his average salary for ten or more years but less than fifteen years service credit, fifty percent of his average salary for fifteen or more years but less than twenty years service credit, and sixty percent of his average salary for twenty years and over service credit.
Subsection B(2) provides disability benefits of 75 percent of the average salary whenever the disability results from an injury received in the line of duty. It is only the disability injury “the nature of which causes state police work to be extra-hazardous” that comes within the ambit of this subsection. Subsection B(3) provides disability benefits in a lesser amount, based upon length of service (forty percent of average salary in O’Connor’s case), whenever the disability results from a continued illness or non-duty injury.
This Court has considered the meaning of “injury” and “continued illness” as used in the statute in Guillory v. State Police Retirement Board, 402 So.2d 161 (La.App. 1st Cir.1981), writ denied 404 So.2d 1260 (La.1981), where we said:
... There must be a cut-off point, however, at which an injury is so insubstantially, slowly or imperceptibly received or sustained as a result of the employment, that it is not an ‘injury’ in and of itself, but a ‘continued illness.’ An aggravation of a preexisting condition in case of more precipitous development of the illness falls under (B)(2) as an ‘injury’, and in cases in which the development was more gradual and less directly related to employment (or not related at all) falls under (B)(3) as a ‘continued illness.’ We need not say precisely when (B)(3) begins to apply. Suffice it to say that a serious heart disease (accompanied by other serious medical conditions) which is aggravated over a period of many years partly as a result of the performance of one’s work as a state police officer, falls under (B)(3), not (B)(2).
In the instant case, the Board concluded as a matter of law, that the applicant’s total disability was due to and caused by his “continued illness”, in this case, “intermittent reactive severe hypertension.” We find no error of law in the Board’s decision, and its finding of facts is not manifestly *454 erroneous. In the instant case there is a rational basis for the Board’s discretionary determination, that determination is reasonable and is supported by the evidence; hence, this Court will not substitute its own judgment for the Board’s, or interfere with the Board’s exercise of its sound discretion.
Applying the Guillory standard to the facts of the case at bar, we hold that appellant’s disability is the result of a “continued illness” rather than an “injury.” See Darbonne v. Louisiana State Police Retirement Board, 408 So.2d 452 (La.App. 1st Cir.1981).
Considering the words “injury” and “continued illness” in their most usual signification and their general and popular use, LSA-C.C. art. 14, the Board was correct in concluding that the plaintiff was not disabled by an “injury” within the meaning of LSA-R.S. 40:1428, but that he was disabled because of “continued illness.”
For the foregoing reasons, the decision of the Louisiana State Police Retirement Board is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.

. O’Connor was in the United States Armed Forces for a period of three years, serving a tour of duty in Vietnam as a helicopter pilot.