586 So.2d 1354 (1991)
LOUISIANA ASSOCIATED GENERAL CONTRACTORS, INC., et al.
v.
The CALCASIEU PARISH SCHOOL BOARD.[*]
Nos. 91-C-0106, 91-C-0109.
Supreme Court of Louisiana.
June 21, 1991.
Rehearing Denied September 5, 1991.
Dissenting Opinion September 25, 1991.
*1355 Nancy Picard, Louis L. Robein, Jr., Gardner, Robein & Urann, Metairie, for applicants.
Edward J. Fonti, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, W.P. Wray, Jr., Christopher P. Pierce, Wray & Kracht, Charles W. Roberts, Baton Rouge, Lester A. Robertson, Lake Charles, for respondent.
Dissenting Opinion of Judge Dennis September 25, 1991.
*1356 COLE, Justice.
In this case we determine whether, under Louisiana law, the Calcasieu Parish School Board may specify that all contracts awarded on its public works projects contain a prevailing wage rate provision.

I. FACTS AND PROCEDURAL HISTORY
During 1988 and 1989, the Calcasieu Parish School Board adopted and undertook a program of public works which involved the construction or repair of numerous school buildings in School District No. 22. Included in the specifications for these public works projects was a provision requiring all contractors and subcontractors to pay all workmen, mechanics and laborers wages not less than those established and stated in Prevailing Wage Rate Determination No. 14950, issued by the Louisiana Department of Labor on May 15, 1988.
On April 14, 1989, the Louisiana Associated General Contractors, Inc.[1] (LAGC) and fourteen of its individual member contractors filed suit against the Calcasieu Parish School Board to enjoin the School Board from letting bids or awarding any public works contracts containing a requirement that prevailing wage rates be paid to the workmen employed on the projects.[2] The plaintiffs also requested declaratory relief in the form of a judgment stating the School Board has no authority to require a prevailing wage provision in its public work contracts and the School Board's resolution requiring prevailing wage provisions violates Louisiana's Public Bid Law (La.R.S. 38:2211 et seq.).
Pursuant to Article 1091 of the Louisiana Code of Civil Procedure, the Southwest Louisiana Building Trades Council, AFLCIO, intervened for the purpose of uniting with the School Board in resisting the plaintiffs' demands. Both the School Board and the Building Trades Council filed peremptory exceptions, raising the objection of no right of action, in which they alleged the named parties plaintiff lacked standing because they did not possess a personal or special interest separate and apart from that of the general public.
On May 9, 1989, after conducting a hearing on the preliminary injunction and the peremptory exceptions, the trial court found the plaintiffs had standing to seek injunctive relief. However, because the trial court felt the plaintiffs had failed to show irreparable injuries would result if an injunction did not issue, it denied the plaintiffs' request for a preliminary injunction.[3]
Subsequently, the case was submitted for a decision based upon the facts as stipulated by all of the parties. Of importance, the School Board stipulated it was resolved to require the payment of prevailing wages on future public works projects. The trial court again found the individual contractors and the LAGC had standing to bring suit.[4] The court concluded the School Board, incident to its authority to build and repair schools, had the authority to include prevailing wage requirements in its bid specifications. The trial court also found the inclusion of prevailing wage requirements did not violate Louisiana's Public Bid Law.
By judgment dated December 12, 1990, the Court of Appeal, Third Circuit reversed. Louisiana Associated Gen. Contractors, Inc. v. Calcasieu Parish School *1357 Bd., 572 So.2d 623 (La.App. 3rd Cir.1990). The court found the prevailing wage rate provision violated the Public Bid Law because it "would tend to increase the cost of work and would tend to stifle competitive bidding." Id. at 627. The appellate court further found the School Board had no authority to require prevailing wage rates in its public works contracts.
Upon application of the School Board and the intervenor, we granted certiorari.

II. STANDING
We first determine the threshold issue of whether the plaintiffs have standing or a right to bring this suit. Stated differently, are they in the class of persons to whom the law affords this cause of action. The applicants contend the plaintiffs have failed to show a personal or special interest in the Board's action which is separate and apart from that of the general public. Accordingly, they contend the plaintiffs lack the requisite right or interest to sustain the present suit.
Because the applicants did not raise the issue of standing before the appellate court, the plaintiffs maintain they have abandoned the standing issue and should not be allowed to resurrect it in this court. We disagree.
The peremptory exception, here raising the objection of no right of action (standing), may be pleaded in any court prior to submission of the case for decision if proof of the ground of the exception appears of record. La.Code of Civ.Proc. arts. 927 & 2163. Articles of our code of civil procedure are to be construed liberally and with due regard for the fact that forms of procedure implement the substantive law and are not an end in themselves. La.Code of Civ.Proc. art. 5051; Lambert v. Donald G. Lambert Const. Co., 370 So.2d 1254 (La. 1979). Consequently, we now consider the applicants' argument that the plaintiffs have no right of action or interest to institute this suit.
Article 681 of the Louisiana Code of Civil Procedure provides in pertinent part, "[A]n action can be brought only by a person having a real and actual interest which he asserts." In their petition, the plaintiff-respondents asserted their interest in the outcome of this suit as follows:

31.
The Lake Charles District Members of the Louisiana Associated General Contractors, Inc., each individually, desire to and will submit bids to the School Board for public works contracts let by the School Board pursuant to the Public Bid Law, including but not limited to the projects listed in Exhibit 1.

32.
Plaintiffs, Lake Charles District Members of the Louisiana Associated General Contractors, Inc., each individually, are taxpaying citizens of this State and the Parish of Calcasieu. The minimum and prevailing wage requirements adopted by the School Board will increase the tax burden on the Lake Charles District Members of the Louisiana Associated General Contractors, Inc.

33.
The Louisiana Associated General Contractors, Inc. is a taxpaying citizen of the State of Louisiana and the Parish of Calcasieu. The minimum and prevailing wage requirements adopted by the School Board will increase the tax burden on the Louisiana Associated General Contractors, Inc.
Our jurisprudence recognizes the right of a taxpayer to enjoin unlawful action by a public body. Under Louisiana law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). The fact that the taxpayer's interest may be *1358 small and insusceptible of accurate determination is not sufficient to deprive him of the right. Id.
In League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980), we refined our previous standard and held a taxpayer will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large. We specifically stated, "Without a showing of some special interest in the performance sought of a public board, officer or commission which is separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed." Id. at 447.
The requirement that a plaintiff in a mandamus proceeding demonstrate a "special interest" in the action was imposed to insure a fair presentation and development of the issues by truly adverse parties. Without a showing of such a personal and special interest in mandamus cases, we feared interference by the judiciary would surpass the authority allocated by the tripartite system.
In League of Women Voters we were careful to point out that unlike a citizen attempting to compel the performance of a public duty, a citizen attempting to restrain unlawful action by a public entity is not required to demonstrate a special or particular interest distinct from that of the public at large. Consequently, taxpayer plaintiffs seeking to restrain action by a public body are afforded a right of action upon a mere showing of an interest, however small and indeterminable.[5]See Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963); Stewart v. Stanley, supra.
The plaintiffs herein seek declaratory and injunctive relief. They clearly are attempting to restrain action by the Calcasieu Parish School Board. Consequently, in order to have standing they are not required to demonstrate a personal or special interest which is separate and distinct from the interest of the general public. They must merely assert a real and actual interest in the action before we will entertain their suit.
The applicants correctly argue that although the plaintiffs alleged and proved they are residents and taxpayers of Calcasieu Parish contributing to the fund used to pay for projects of the School Board, the facts as stipulated by the parties do not sufficiently prove the plaintiffs' allegation that the Board's action would, with certainty, increase their tax burden.[6] However, proof of an increased tax burden is not the only method by which a taxpaying citizen may seek judicial authority to restrain a public body from alleged unlawful action.
Indeed, the individual contractors undoubtedly have an interest in restraining the Board's action. The record reveals the contractors have submitted and desire to be awarded bids on the projects which are subject to the School Board's prevailing wage requirements. No one could have a more personal stake in the legality of these public bid contracts than those bidding on the contracts. If these individual contractors do not have the requisite standing to contest the School Board's action, clearly no one does.
We likewise find the respondent-association has a sufficient interest to bring this lawsuit. The LAGC is composed of Louisiana contractors who engage in the construction of public works projects. It follows that the LAGC is keenly interested in maintaining the integrity of the public bid process in Louisiana. Moreover, its membership includes the fourteen individual *1359 contractors who have submitted and desire to submit bids on future Calcasieu Parish school projects. Because the association receives dues from each of its members as each member receives, performs and is paid for the performance of its work on public works projects, the deprivation of contracts and profits from its members would divest the LAGC of member dues. Under these circumstances, we find the association's interest in the present lawsuit is sufficient.

III. INJUNCTION
The Court of Appeal held the trial court erred in requiring the plaintiffs to prove irreparable injury in order to enjoin the School Board's actions. Because we believe the appellate court's ruling sets an erroneous precedent for bypassing the requirements of the Code of Civil Procedure in future cases where plaintiffs assert a violation of a prohibitory law and the legislature has not expressly prohibited the actions at issue, we feel compelled to address this issue.
It is well settled under Louisiana law that the judicial branch may not ordinarily enjoin a municipal body from acting under the guise of its legislative powers. Bardwell v. Parish Council of Parish of East Baton Rouge, 216 La. 537, 44 So.2d 107 (1949); Durrett Hardware & Furniture Co. v. City of Monroe, 199 La. 329, 5 So.2d 911 (1942). However, we have held that where the threatened action of a municipal body is "in direct violation of a prohibitory law" a court of equity may enjoin the threatened action. Id. (emphasis added). In such cases, it is not necessary for the plaintiff to show irreparable injury. Id. This judicially created rule is an exception to the general rule that an injunction will not issue where irreparable injury will not otherwise result. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979). See also La.Code of Civ.Proc. art. 3601.
In finding a showing of irreparable harm unnecessary, the Court of Appeal relied on several appellate court decisions for the proposition that a party seeking an injunction need not prove irreparable injury if the threatened action is a violation of a prohibitory law.[7] It is apparent the Louisiana appellate courts have gradually and perhaps inadvertently broadened the narrow exception to the irreparable harm rule by eliminating the requirement that the violation of a prohibitory law be direct. Absent a showing of irreparable injury, we believe the Louisiana judiciary should not be allowed to enjoin public action unless there is a direct violation of a prohibitory law. Thus, the correct issue to be determined is whether the Board's action directly violates a prohibitory law.
The Public Bid Law (La.R.S. 38:2212 et seq.) is a prohibitory law founded on public policy. Haughton Elevator Div. v. State Division of Administration, 367 So.2d 1161 (La.1979). It was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. Id.
Although Louisiana's Public Bid Law is a prohibitory law, we believe the Board's action in specifically requiring all bidders to comply with a predetermined wage scale does not directly violate the Public Bid Law. The circumstances presented in our case are distinguishable from those in Stevens Concrete Pipe and Products, Inc. v. Burgess, 202 So.2d 498 (La.App. 1st Cir. 1967), aff'd, 252 La. 136, 209 So.2d 733 (1968), in which the public entity, by specifying a minimum twelve foot length pipe, directly violated the express language of the closed specifications statutes contained in La.R.S. 38:2290 et seq. Unlike the closed specification statutes which specifically and expressly restrict the use of *1360 closed product specifications,[8] there exists no express language in the Public Bid Law which prohibits a public entity from including in its advertised specifications certain labor requirements. Because the Board's action did not amount to a direct violation of the Public Bid Law, the trial court applied the correct standard in evaluating the plaintiffs' request for a preliminary injunction.

IV. AUTHORITY
With the foregoing procedural matters resolved, we now address the merits of the case. The central issue for our determination is whether the resolutions adopted by the Calcasieu Parish School Board in which it attempts to fix wages are invalid for lack of delegated authority from the legislature. In their appellate briefs, the applicants set forth various sources of power from which the School Board allegedly draws the authority to require prevailing wage rates in its public works contracts. In this section we address each of the Board's alleged sources of power. After summarizing the myriad of arguments presented by both sides, we believe the precise issue for our determination is whether the School Board's specification requiring contractors to agree to pay a predetermined prevailing wage is a specification which the School Board is authorized to insert in contracts which must be let to the "lowest responsible bidder" as required by Louisiana's Public Bid Law.

A. Necessary and Implied Power
In response to the respondents' attack upon the Board's action which is founded on the theory that the School Board lacks the power to require the inclusion of a prevailing wage provision in its public works contracts, the Board contends it is validly exerting powers necessarily and implicitly granted to it by the state legislature.
The Louisiana Constitution provides for the creation of school boards and the laws affecting them by the state legislature.[9] By statute, the legislature has vested the school boards of this state with general control and management of the public schools in their district. La.R.S. 17:81, which expressly enunciates the general powers of school boards, provides as follows:
A. Each city and parish school board shall determine the number of schools to be opened, the location of school houses, the number of teachers to be employed, and select such teachers from nominations made by the city or parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary, or salary schedule, presently in force. The boards shall see that the provisions of the state school law are complied with.
B. Each school board may permit school buildings to be used outside of regular school hours for academic purposes including but not limited to tutoring and study hall. The board shall adopt rules and regulations governing the terms and conditions, including fees if any, under which such buildings shall be used.
C. Each city or parish school board is authorized to make such rules and regulations *1361 for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education, as it may deem proper.
D. (1) The regular meetings of each city and parish school board shall be held at least once each month on such day as each board shall select. Additional regular meetings may be held as each board designates. Special meetings may be held as boards determine or as occasion may require.
(2) However, if a city or parish school board fails to hold a public meeting at least once during a calendar month, registered voters of the district may petition the board to hold a public meeting. Within five calendar days of receipt of such a petition by the president of the board or, if he is unavailable, by any other board member containing the names of at least one hundred registered voters of the district, the board shall hold a public meeting. The members of a city or parish school board that fails to meet as required by this Paragraph shall not be entitled to compensation or per diem for that month.
E. Each city or parish school board shall exercise proper vigilance in securing for the schools of the district all funds destined for the support of the schools, including the state funds apportioned thereto, and all other funds.
F. The secretary of each city and parish school board shall keep a record of all transactions and proceedings of the board.
G. City and parish school boards may receive land by purchase or donation for the purpose of erecting school houses; provide for and secure the erection of same, construct such outbuildings and enclosures as shall be conducive to the protection of property, and make repairs and provide for the necessary furniture, equipment and apparatus.
H. City and parish school boards have the power to recover for any damage that may be done to the property in their charge; they may change the location of a school house, sell or dispose of the old site, or of any site which for any reason can no longer be used or which is unused and unnecessary or unsuitable as such, and use the proceeds thereof for procuring a new one. Provided that the Orleans Parish School Board shall have authority to prescribe the rules and regulations to govern the building, equipping and repairing of school houses, and the dates of the meetings of that board.
I. The provisions of this Section shall not affect the provisions of R.S. 17:461 through 463 relative to the Orleans Parish School Board.
La.R.S. 17:81 (emphasis added).
In addition to the above quoted powers expressly granted by the legislature, a school board possesses additional implied powers which are necessary to implement its policies and fulfill its duties. St. John the Baptist Parish Ass'n of Educators v. Brown, 465 So.2d 674 (La.1985). It is the applicants' contention that the School Board is validly exerting powers necessarily and implicitly granted to it by the state legislature. Specifically, they contend the School Board's authority to require the inclusion of prevailing wage provisions in its public works contracts is necessary and incidental to its authority under La.R.S. 17:81(G) to erect school buildings.
On several occasions, Louisiana courts have recognized various implied powers of school boards. For example, in Louisiana Teachers' Ass'n v. Orleans Parish School Bd., 303 So.2d 564 (La.App. 4th Cir.1974), writ denied, 305 So.2d 541 (La.1975), the court held that incidental to their statutory duties to hire teachers and fix teacher salaries, school boards have the power and authority to collectively bargain with an agent selected by the employees.[10] Similarly, the appellate courts of this state *1362 have found school boards empowered to enter into contracts to provide garbage disposal services for the school[11] and to determine whether a school teacher is entitled to sabbatical.[12] In comparison, the Louisiana Supreme Court recently determined a school board has no necessary or implied power to call a referendum election.[13]
Although the courts of this state have recognized various prerogatives of school boards which are necessary and incidental to the powers expressly bestowed upon them by La.R.S. 17:81, the question of a school board's implicit authority to act becomes more complicated when, as in the present case, the school board's action implicates another legislative statute.
Pursuant to Louisiana's Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions. As a political subdivision, the general powers granted to a school board under La.R.S. 17:81 are subject to and limited by the requirements of the Public Bid Law. Consequently, a school board has no authority to take any action which is inconsistent with the Public Bid Law.[14]
Louisiana's Public Bid Law provides in pertinent part as follows:
All public work exceeding the contract limit as defined herein, including labor, materials, and all purchases of materials or supplies exceeding the sum of ten thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part.
La.R.S. 38:2212(A)(1)(a).
As stated previously, the purpose of the Public Bid Law is to secure free and unrestricted competition among bidders, to eliminate fraud and favoritism, and to avoid undue or excessive costs.[15]
The School Board's argument that it has the implied power to fix wage rates for the construction workers employed on its public works projects pursuant to its expressly granted power to construct and erect school buildings under La.R.S. 17:81(G) ignores the Public Bid Law. When the Public Bid Law is taken into consideration, it becomes apparent the power delegated to the School Board to construct school buildings does not necessarily imply the power of the School Board to insure quality labor by establishing a prevailing wage rate on its construction projects.
The Public Bid Law requires all public construction contracts of major importance be let to the "lowest responsible bidder." The term "lowest responsible bidder" does not constrain the public authority to accept the lowest monetary bid. Haughton Elevator Div. v. State Division of Administration, 367 So.2d 1161 (La.1979). *1363 Rather, the Public Bid Law vests the public entity contracting the work with wide discretion to determine bidder responsibility. Id. In determining bidder responsibility, the public entity may look to financial ability, skill, integrity, business judgment, experience, reputation, quality of previous work on contracts, and other similar factors bearing on the bidder's ability to successfully perform the contract. Housing Authority of the City of Opelousas, Louisiana v. Pittman Construction Co., Inc., 264 F.2d 695, 698 (5th Cir.1959). See also Cooper & Horton, Competitive Bid Requirements For School District Contracts, 46 Tex.B.J. 1154, 1155 (1983) (The criteria for determining bidder responsibility includes such things as experience, skill, ability, business judgment, financial capacity, integrity, honesty, possession of necessary facilities or equipment, previous performance, reputation, promptness and any other factors which could reasonably be asserted as being relevant to successful performance.).
By enacting the Public Bid Law, the legislature has developed a rather complex and unique procedure by which public entities are to award public works contracts. Central to this process is the legislature's desire that all prospective bidders be given an opportunity to bid on a given project. In choosing the term "lowest responsible bidder," the legislature sought to further the goals of the Public Bid Law (insuring competitive bidding and protecting the taxpaying citizen from increased costs resulting from fraud and favoritism) while at the same time expressly providing public entities with a mechanism to insure the skill and quality of the workers employed on the project. The School Board's resolution, which requires, as a prerequisite to bidding, the payment of prevailing wages on public works projects is, in effect, an unnecessary prior restraint imposed on the prospective bidders which disturbs the careful balance achieved by the legislature.
Such a restriction hampers the bidding process as contemplated by the legislature and as such is inconsistent with the letter and spirit of the Public Bid Law.
We recognize the School Board has a legitimate interest in insuring quality workmanship on its construction projects. However, in allowing public entities to award contracts to the "lowest responsible bidder" rather than simply to the "lowest bidder" the legislature has created a system by which the School Board may refuse to accept bids from bidders who are thought to be irresponsible or incapable of performing the work as desired. The procedure detailed by the legislature in the Public Bid Law provides the School Board with a method by which it can adequately protect its interest in insuring skilled and qualified labor are employed on its work projects. Consequently, the School Board's action in insisting that a prevailing wage rate be made a condition of its public works contracts is not necessary to achieve its goal of insuring qualified labor on its construction projects.
In addition, the practice adopted by the School Board in requiring that all bidders pay prevailing wage rates is known as a "prequalification" of bidders.[16] By "prequalifying" bidders, the School Board has made a determination of a contractor's competency and responsibility to satisfactorily complete a given construction project before he submits a bid. Because this process restricts full and free competition among prospective bidders, it is generally disfavored. Jackson, Prequalification and Qualification: Discouragement of New Competitors, 19 Pub.Cont.L.J. 702, 703 (1990). Although not intending to do so, the Board has discouraged and prevented the competitive bidding process which is required by statute under Louisiana law. Simply, a contractor who does not pay his labor the prevailing wage, or is unwilling to do so for various reasons, is disqualified from bidding.
*1364 The School Board argues it has the power to pre-determine who shall bid on its construction projects pursuant to its wide discretion to determine bidder responsibility. We are not persuaded by the Board's argument. There is no legal authority requiring or allowing a responsibility determination to be a precondition to bidding on public contracts. Absent statutory law authorizing the "prequalification" of bidders, we refuse to allow a public entity to engage in a process which eliminates certain bidders from competing before the bidding process even begins.

B. Power to Determine and Prescribe Bid Specifications
In addition to the necessary and implied power it claims to possess pursuant to La.R.S. 17:81, the School Board contends it has the right to specify certain prevailing wage rates to be paid on its public works contracts pursuant to its authority under the Public Bid Law to present and advertise the "contract, plans and specifications" which it determines are appropriate for a given project.
Although the Public Bid Law makes no explicit reference as to what, if any, labor specifications may be advertised by a public entity, it expressly regulates the use of specifications as to products and materials.[17] An examination of the legislative restrictions which have been placed on a public entity's ability to prescribe product specifications provides insight into the legislative intent regarding labor specifications.
La.R.S. 38:2212(F) provides as follows:
(1) Whenever a public entity desires to purchase technical equipment, apparatus, machinery, materials, or supplies of a certain type and such purchases are clearly in the public interest, the public entity may specify a particular brand, make, or manufacturer in the specifications let out for public bid as provided by this Part.
* * * * * *
(2) Wherever in specifications the name of a certain brand, make, manufacturer, or definite specification is utilized, the specifications shall state clearly that they are used only to denote the quality standard of product desired and that they do not restrict bidders to the specific brand, make, manufacturer, or specification named; that they are used only to set forth and convey to prospective bidders the general style, type, character, and quality of product desired; and that equivalent products will be acceptable.
Additionally, La.R.S. 38:2290, commonly referred to as the Closed Specification Statute, supplements the low bidder statute as follows:
A. No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building or except in those cases where a particular material is required to preserve the historical integrity of the building or the uniform appearance of an existing structure.
B. Under no circumstances shall a closed specification be submitted, or authorized, where any person or group of persons possess the right to exclusive distribution of the specified product.
The above two statutes clearly demonstrate a conscious effort on the part of the legislature to assure uninhibited competitive bidding. The Closed Specification Statute was designed to supplement the Public Bid Law by prohibiting the use of closed specifications which exclude products of equal utility and appearance and consequently *1365 prevent or restrict full and free competition.
Our jurisprudence has interpreted the Closed Specification Statute on two occasions. In Stevens Concrete Pipe and Products, Inc. v. Burgess, 252 La. 136, 209 So.2d 733 (1968), we held the City-Parish Council's requirement that all concrete pipe used in its public works projects be in minimum lengths of twelve feet violated La.R.S. 38:2290 because it stifled competition by excluding products of equal utility and appearance. The same analysis led to a different result in Tide Equipment Co. v. Pointe Coupee Parish Police Jury, 312 So.2d 154 (La.App. 1st Cir.1975), writ denied, 315 So.2d 38 (La.1975), where the court indirectly upheld a provision in the advertised specifications which called for a tractor manufactured in the United States. The court found the Police Jury was justified in rejecting the plaintiff's bid proposing a tractor manufactured in Japan because of the uncertainty surrounding the relatively newly manufactured Japanese tractor.[18] It is important to note, however, that the American-made specification would have been struck down as violative of the Closed Specification Statute had the plaintiff demonstrated by a preponderance of the evidence that the quality of its product was equal to that of the specified American-made tractor.
In the area of product specifications, the emphasis in the statutory language and the case law is on the quality of the product or material. Under the Public Bid Law, a public entity is allowed, subject to certain legislatively imposed restrictions, to specify a particular quality of product desired. A public entity may not impose a product specification which suppresses competition by eliminating products of equal quality.
The Public Bid Law does not allow a public entity to specify the price of a given product or material. There are two obvious reasons for this. First, the goal of the Public Bid Law is to insure the lowest price for a specified quality of work. If a public entity were allowed to specify the price of a component of the work, the public bid process would be subject to the very abuse and exploitation it is intended to guard against. Additionally, as a practical matter, specifications as to price do not prove effective because although the price of a given product may suggest a certain quality of product, price is not always indicative of quality.
The same principles are applicable by analogy to the quality of a laborer. A mandate of a prevailing wage inhibits bidders who may be able to perform the construction work equally as well but at a lower price. Additionally, there is no guarantee the establishment of a prevailing wage on public works contracts will insure quality workmanship on the projects. Indeed, "[t]here is no essential or necessary connection between the hourly wages paid by a contractor and the intrinsic quality and character of the work done." Hillig v. City of St. Louis, 337 Mo. 291, 85 S.W.2d 91, 93 (1935).
When faced with the identical issue we address today, the Alabama Supreme Court stated in Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428, 434 (1967):
We do not think ... the fixing of a minimum wage for employees of the contractor can reasonably or necessarily be expected to tend to insure better quality work under the instant contract. Under a required minimum wage, the unskillful artisan will be guaranteed the same minimum wage as the skillful workman, the indolent the same minimum wage as the industrious craftsman. The power to designate the quality of material to be used does not carry with it the power to require that the contractor must pay a *1366 specified minimum price to the seller for each unit of material used, and, by analogy, we do not think the power to designate the quality of workmanship carries with it the power to require that a minimum, hourly, wage shall be paid to all employees of the same class performing the work.
Thusly, the highest court of a sister state has treated the issue of power to determine and prescribe the fixing of a minimum wage. The reasons are not without logic and persuasion.
Specifications should be drafted so that the goods or services desired are definitively set forth and yet not be so restrictive as to eliminate competition. Great care must be taken to see that specifications are properly tailored so that the ultimate goal of the system (to promote competition) is not lost. While the School Board may have, consistent with the Public Bid Law, included in its bid advertisements certain specifications directly related to the quality of the labor to be employed on its projects, (i.e., all workers must have a minimum of five years experience in their given field) the Board's specification that all laborers be paid a minimum prevailing wage stifles competition while at the same time not adequately insuring quality. Consequently the Board's action defeats the purpose behind the Public Bid Law by wrongfully eliminating a group of bidders who may, in fact, be responsible.

C. Power to Determine Bidder Responsibility
The applicants lastly argue the School Board has the power to require all prospective bidders to pay prevailing wages pursuant to its legislative authority to establish standards for determining a contractor's responsibility. Simply stated, the School Board argues a bidder's willingness and ability to pay wages meeting or exceeding the standard prevailing wage rate is one of the factors by which it may find a bidder to be "socially responsible."[19]
There is nothing to suggest the term "responsible" as contained in Louisiana's Public Bid Law has reference to anything other than the quality, fitness and capacity of the low bidder to satisfactorily perform the proposed work. Moreover, the broad reading of the term "responsible" urged by the applicants is inconsistent with the purposes underlying the competitive bid statute as it eliminates an objective standard from the Public Bid Law and substitutes "a concept so nebulous that it removes any meaningful constraint on the Board's actions." Associated General Contractors of California, Inc. v. City & County of San Francisco, 813 F.2d 922, 926 n. 7 (9th Cir.1987). See also Associated General Contractors of California v. San Francisco Unified School District, 616 F.2d 1381 (9th Cir.1980), cert. denied, 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980).
Furthermore, the power to set or prescribe a minimum wage is regarded as an exercise of the police power because a minimum wage is generally intended to insure employment at fair and reasonable wages and to stimulate the economy. Parish Council of Parish of East Baton Rouge v. Louisiana Highway & Heavy Branch of Associated General Contractors, Inc., 131 So.2d 272 (La.App. 1st Cir.1961). See also, 7 E. McQuillin, The Law of Municipal Corporations § 24.434 (3d ed. 1989). Were we to allow the School Board to define the term "responsible" to mean "socially responsible" *1367 we would be allowing it to engage in the exercise of police power.[20]
A municipal corporation, such as a school board, has no inherent power to enact police regulations.[21] Municipal corporations are subordinate branches of state government established by the legislature for the purpose of administering local affairs of government, and as such, possess only such powers as are conferred upon or delegated to them by the state. Bradford v. City of Shreveport, 305 So.2d 487 (La. 1974); Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952); State v. Jordan, 207 La. 78, 20 So.2d 543 (1944). Thus, in order for a school board to have the authority to prescribe the rate of wages to be paid to employees of those who contract for the construction of public works, the authority to do so must be delegated to the school board from the state.
The legislature's requirement of competitive bidding in connection with public works contracts is a valid exercise of the state police power for the protection of the public. In 1968, the Louisiana legislature determined the payment of prevailing wage scales by contractors on public works projects was a matter affecting the health, safety and welfare of residents of the State of Louisiana and adopted what was known as the Prevailing Wage Law (La.R.S. 38:2301) (Act No. 65 of 1968). Accordingly, the legislature modified the definition of "responsible bidder" as contained in the Public Bid Law. The Prevailing Wage Law specifically stated: "no bidder who does not comply with the requirements of this act shall be considered a responsible bidder within the meaning of Louisiana law." La. R.S. 38:2301(A) (repealed 1988).
In enacting the Prevailing Wage Law in 1968, the legislature validly exercised its police power and defined a "responsible bidder" as one who agreed to pay prevailing wages. The fact that the legislature has the requisite authority to prescribe the payment of prevailing wages on public works projects does not mean a parish school board is clothed with a similar grant of power. Absent authority from the state legislature, a parish school board cannot infringe upon the rights of the state and invade the domain of the legislature.
After 1968, municipalities, parishes and other local political subdivisions such as school boards were authorized by the state legislature to utilize a prevailing wage scheme in public works contracts as long as the prevailing wage provisions were identical to those provided by the Prevailing Wage Law. La.R.S. 38:2301(M), (repealed 1988). Based on the title of the enacting legislation, Act No. 65 of 1968,[22] as quoted below, the clear intent of the legislature was to authorize local governing bodies and agencies, such as school boards, to require the payment of prevailing wages in the area of public construction projects if they so resolved:
To express the public policy of Louisiana relative to the payment of prevailing wages in the particular area on all projects of the State or its agencies; to require that the prevailing wages be ascertained in advance of such projects and that all bidders therein be bound by these determinations and all contractors be required to comply therewith; to define what is included in the term "wages" and to set forth the method of making the said determinations; and to *1368 authorize local governing bodies to make similar requirements in their contracts for public works; to provide civil penalties for the violation of this act. (Emphasis added.)
However, by Act No. 90 of 1988, the Louisiana legislature expressly repealed La.R.S. 38:2301 in its entirety. By virtue of this repeal, local governing authorities are no longer provided with the authority to require the payment of prevailing wages on public contracts. Without such authority, the School Board does not possess the police power to require prevailing wage payments on its public works projects. While it may be desirable and beneficial for the local economy for the School Board to require the payment of prevailing wages on its construction projects, without specific legislative authority to do so, the Board is powerless to act.
Our conclusion that the school boards of this state do not possess the police power to require prevailing wage rates on public construction projects is supported by the fact that the Louisiana legislature has specifically granted school boards of the state limited police power in the area of public works. The legislature has expressly delegated to school boards the power to set aside a certain amount of funds to be awarded to small businesses, minority-owned businesses, or women-owned businesses.[23] For example, those school boards of parishes which have populations in excess of five hundred thousand are authorized and empowered by the state legislature to set aside a certain percentage of the anticipated total procurement for the construction of public works for awarding to small businesses.[24] Similarly, the legislature has expressly delegated to local political subdivisions the power to impose state residency requirements for laborers performing work on public contracts.[25] Unquestionably, local political subdivisions are not authorized to determine bidder responsibility in terms of social awareness without specific statutory authorization from the legislature.

V. CONCLUSION
For the following reasons, we hold the Calcasieu Parish School Board does not possess the requisite authority to require the payment of prevailing wages on its public construction projects. First, the School Board's requirement is not necessary and incidental to its power under La. R.S. 17:81(G) to erect school buildings, because the School Board's asserted interest in obtaining qualified and skilled labor on its construction projects is adequately protected by the "lowest responsible bidder" language in the Public Bid Law. Second, the School Board's requirement constitutes a "prequalification" of bidders which violates the Public Bid Law by eliminating prospective bidders prematurely. Third, although a public entity may be able to make certain specifications as to the quality of labor employed on its projects, it is not allowed to specify the price paid to such labor. Fourth, absent express statutory, authority from the state legislature, the School Board does not have the police power to require payment of a prevailing wage on its public construction projects.
Because the Calcasieu Parish School Board has no authority to require prevailing wage rates in its public works contracts, we affirm the decision of the Court of Appeal. Accordingly, we remand this case to the trial court for the issuance of a permanent injunction in favor of the plaintiffs and against the defendant prohibiting the defendant from requiring a prevailing wage rate in its future public works contracts. Additionally, based on our appreciation of the current state of affairs, the plaintiffs may still have a valid claim for injunction as to some of the School Board's *1369 projects.[26] Therefore, we further order the trial court to make a factual finding as to the present status of the School District No. 22 projects and enter injunctions where appropriate.
AFFIRMED AND REMANDED.
WATSON, J., joins in the opinion and also assigns concurring reasons.
CALOGERO, C.J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
MARCUS, J., dissents.
WATSON, Justice, concurring.
The majority opinion is correct in finding that the Calcasieu Parish School Board may not require bidders on public works projects to agree to pay the "prevailing wage." Since the 1988 repeal of Act No. 65 of 1968, there has been no "prevailing wage" in Louisiana. The Louisiana Department of Labor is no longer authorized to make such wage rate determinations.
Unless the legislature breathes new life into the "prevailing wage" concept, the School Board cannot adopt something which does not exist as a matter of law. Whether the concept is a good idea is of no relevance to this decision. The fact is simply that there is no "prevailing wage" at present in Louisiana. Accordingly, I concur in the majority opinion.
CALOGERO, Chief Justice, dissenting.
It is the majority's opinion that the Public Bid Law is offended by a public entity's prevailing wage specification. I disagree. The purpose of Louisiana's Public Bid Law is to protect against contracts entered into because of favoritism, with its often times exorbitant and extortionate prices. A prevailing wage provision may or may not have the effect of increasing the price a public entity will pay, but prevailing wage rates are nonetheless the antithesis of exorbitant and extortionate pricing in that they reflect the going rate for properly performed services. The Public Bid Law concerns not price so much as the process of fairly letting the contract to the responsible bidder who presents the lowest price in conformity with the advertised specifications.
Furthermore, it is my opinion that the School Board's authority to require a minimum prevailing wage incident to construction contracts it lets is incidental to its power under LSA-R.S. 17:81(G) to erect school buildings. Nothing in the current law prohibits a public entity from adopting a prevailing wage specification in its public contracts, and it is my view that the School Board was at liberty to do so. In support of this proposition, notice should be taken of the history and content of LSA-R.S. 38:2301(M), Louisiana's former prevailing wage law. That statute was enacted in 1968 and repealed in 1988. During that twenty years, the prevailing wage law was mandatory as applied to the State, whereas local projects by municipalities, parishes, and other political subdivisions were exempted from the provisions of the law where at least ninety percent of the funds being used in the project were funds belonging to that political subdivision. Section (M) provided, however, that the local subdivision could opt to require the payment of the prevailing wage by adoption of an ordinance or resolution.
*1370 By exempting local subdivisions from the mandatory application of prevailing wages, but providing for its option to do so when a large majority of local funds were being used, the statute made plain that its purpose was to insure that the autonomy of political subdivisions writing bid specifications would not be infringed upon by the enactment of a mandatory prevailing wage law applying to the State. The repealed statute was not in the nature of "enabling" legislation intended as a grant of power to political subdivisions. It merely recognized that local subdivisions could continue to exercise the option to require prevailing wage provisions as part of the "contract, plans and specifications" as it determined were appropriate and in the public interest. See Tide Equipment Co. v. Pointe Coupee Parish Police Jury, 312 So.2d 154, 157-58 (La.App. 1st Cir.), writ denied, 315 So.2d 38 (La.1975) (Police Jury's decision to specify that equipment to be purchased must be manufactured in the United States was within its discretion). Therefore, the repeal of LSA-R.S. 38:2301 did not remove local agencies' authority to require a prevailing wage specification, because that power and authority existed independent of the State's prevailing wage law.
Because it is my view that the School Board has the authority to include a prevailing wage provision in its bid specifications, and that such provision is not violative of the Public Bid Law, I respectfully dissent.
DENNIS, Judge, dissenting.
I respectfully dissent.
The majority has accepted an invitation to decide what the law ought to be instead of applying the statute enacted by the legislature. The Public Bid Law, La.R.S. 38:2211-2226, which the majority now holds prohibits a local school board from inserting a prevailing wage provision in its construction contracts, had its beginnings in 1926. La.Acts 1926, No. 73. In 1968 the legislature enacted the prevailing wage law, which approved and required prevailing wage clauses in public works contracts at the state level but left local public entities free to opt for or against such clauses in their contracts. La.R.S. 38:2301 (repealed 1988). In 1977 the Public Bid Law was reenacted in its present form. In 1988 the legislature repealed the prevailing wage law by two substantially identical acts. Both the 1977 reenactment of the public bid law and the 1988 repealers of the prevailing wage law were silent as to whether a public entity could require a prevailing wage clause in a public works contract, just as the public bid law is silent on the subject today. Acts 1977, No. 103; Acts 1988, Nos. 18, 90. Therefore, it is only by a strained, implausible and magical construction that the majority arrives at the conclusion that the public bid law, which was reenacted after, and coexisted for a time with, the prevailing wage law, was intended all along by the legislature to outlaw prevailing wage clauses. In other words, under the majority's preposterous statutory interpretation, the reenactment of the public bid law actually rendered prevailing wage clauses in public works contracts unlawful in 1977, although the legislators themselves failed to recognize this fact and continued to engage in acrimonious debate on the subject until 1988.
The majority's construction does not follow the required rules of interpretation. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature, La.Civ.C. art. 9. Laws on the same subject must be interpreted in reference to each other. La.Civ.C. art. 13. A proper, straightforward application of these principles would have required a different resolution. The 1968 prevailing wage law required prevailing wage clauses in state public works contracts but excepted local public entities from this requirement leaving them free to include or exclude such clauses. The 1977 public bid law reenacted subsequent to the prevailing wage law is *1371 silent on the subject of prevailing wage clauses. The 1988 acts simply repealed the prevailing wage law and did not purport to enact any policy or prohibition on the subject. Therefore, the legislature clearly intended to abolish the mandatory requirement of prevailing wage clauses in state public works contracts but clearly did not intend to deprive local public entities of the discretion to include or exclude such clauses in their contracts.
Even if one could ignore the majority's failure to interpret the public bid law in reference to the other laws intended to establish state policy with respect to prevailing wage clauses, the court's opinion is flawed in several other respects. Of the additional defects, the principal ones are that: (1) There is nothing in the words or provisions of the public bid law that forbids a public entity to control working conditions on its own public works projects; (2) the majority of American courts have interpreted their laws governing competitive bidding to permit a public entity to require contract conditions and bid specifications that provide wage or other working conditions standards; (3) the majority opinion in the present case improperly and unnecessarily undermines the implied powers of school boards and other public entities.
The Public Bid Law, La.R.S. 38:2181-2226, does not contain any words or provisions that prohibit a public entity from voluntarily requiring that a contractor pay a prevailing wage on a public project. In essence, it requires that all public works exceeding a certain amount by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised. § 2212 A(1)(a). The only public contract provisions that are expressly prohibited as being contrary to public policy are those that require a public body to assume liability for damages caused by the negligence of others, § 2195, or require a contractor to hold harmless or indemnify a public body against damage caused by the negligence of such body or its servants. § 2216 E. In fact, the Act appears to affirmatively authorize a public entity to use a sliding scale provision in its specifications very similar to prevailing wage methodology by providing that "[t]he specification may contemplate a fixed escalation or de-escalation in accordance with the United States Bureau of Labor Statistic's Consumer Price Index and/or Wholesale Price Index. Bids based on specifications which are subject to a recognized escalation index shall be legal and valid." § 2212 A(2). In any event, the Public Bid Law places very few limitations on what a public entity may require as a condition to a public works contract; in none of its prohibitions or limitations does the statute even mention, much less outlaw, a prevailing wage clause.
The majority opinion not only reads into the statute a prohibition or limitation not placed there by the legislature. It also adopts a position as a judicial policy maker that is contrary to that of the decisions of the majority of American courts. According to the weight of modern authority, there is no fundamental objection to the insertion of reasonable conditions and stipulations in the advertisement for bids for public contracts, and in the contracts themselves, designed for the protection of laborers employed by the contractor and the betterment of laboring conditions. 64 Am. Jur.2d § 90 (1972). For example, local governments have in many cases been held able to incorporate in their contract specifications provisions that bidders pay certain minimum wages, R.D. Andersen Co. v. City of Topeka, 228 Kan. 73, 612 P.2d 595 (1980); Iowa Electric Co. v. Cascade, 227 Iowa 480, 288 N.W. 633 (1939); Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651 (1937); Roland Elec. Co. v. Baltimore, 210 Md. 396, 124 A.2d 783 (1956) and requirements that workers' employment be limited to a maximum number of hours per week. Spahn v. Stewart, supra; Curtice v. Schmidt, 202 Mo. 703, 101 S.W. 61 (1907); Norris v. Lawton, 47 Okla. 213, 148 P. 123 (1915); Campbell v. School Dist., 328 Pa. 197, 195 A. 53 (1937); Milwaukee v. Raulf, *1372 164 Wis. 172, 159 N.W. 819 (1916); See Antieau, 1A Municipal Corporation Law § 10.40 (1991). In addition, courts have recognized the local entity's power to prescribe the methods of and time for payment of laborers, People ex rel. North v. Featherstonhaugh, 172 N.Y. 112, 64 N.E. 802 (1902), and to insert contract provisions requiring the use of local labor and local materials. St. John v. King, 130 Cal.App. 356, 20 P.2d 123 (1933); Ebbeson v. Board of Publ. Educ., 18 Del.Ch. 37, 156 A. 286 (1931); Diver v. Keokuk Savings Bank, 126 Iowa 691, 102 N.W. 542 (1905); Allen v. Labsap, 188 Mo. 692, 87 S.W. 926 (1905).
It is a well established principle of law that the selection of contractual provisions such as these are within the reasonable discretion of the local entity in managing its own affairs when such discretion is implicitly granted by the state constitution or legislature, and that the wisdom of the choice of the entity is not to be questioned by the court. 10 E. McQuillin§ 29.83 (1990). Recently this court applied that principle in recognizing, in Eiche v. BESE, 582 So.2d 186 (La.1991), that Article 8, Section 3 of the Louisiana Constitution reserves to the school boards the "control over [their] business affairs." La. Const. art. VIII, § 3. Moreover, the legislature has expressly empowered the local boards to provide for the erection and repair of "school houses, outbuildings and enclosures" within their districts. La.R.S. 17:81. These provisions authorize the local boards to formulate contracts and provide for reasonable conditions thereto deemed necessary or desirable to effectuate the public purpose of the public works. Consequently, because the school boards' power to exercise discretion over their own business affairs has been granted by the constitution and bolstered by the legislature, the function of judicial review is merely to determine whether the board has acted arbitrarily, unreasonably or fraudulently. Lake Terrace Property Owners Association v. City of New Orleans, 567 So.2d 69, 74-75 (1990); State ex rel Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153, 167 (1943).
In the present case, the majority of this court and the court of appeal have completely abandoned the traditional standards of judicial review to override the business decision of the school board on a matter within its discretion. These judges admit that the school board's action was not in "direct" conflict with the constitution or the public bid law. They do not and cannot claim that the board's action was arbitrary, unreasonable or fraudulent. At this point the traditional rules of judicial review and the required rules of statutory interpretation should have impelled this court to uphold the board's action as a non-arbitrary exercise of its constitutional and statutory powers even if the judges personally believed it was an unwise or imprudent policy. But the majority of this court was so determined to substitute its judgment for that of the school board on this policy question that it read into the public bid law a prohibition of prevailing wage clauses that even the majority admits is not expressed by the statute. Thus, the majority violated a cardinal rule of statutory construction by disregarding the letter of the law under the pretext of pursuing its spirit. Even more deplorable are the court's distortional interpretative methods that led it to discover today in the 1977 public bid law's silence an implied anti-prevailing wage law that somehow peacefully coexisted with the pro-prevailing wage law that sanctioned and to an extent required prevailing wage clauses from 1968 to 1988. It is self evident that the majority's interpretation cannot be squared with the obvious fact that, if the legislature had perceived any conflict between the prevailing wage law and the public bid law, one or the other law would have been amended to resolve the conflict in 1977 when a complete revamping of the bid statute was done. Most lamentable, however, is the pall that the majority's decision may have cast over the implied powers of all public entities subject to the public bid law. When this court demonstrates its willingness to play fast and loose with clear legislative history, the rules of statutory construction and the settled *1373 principles of judicial review, it casts grave doubt upon the ability of all public entities to enter binding and enforceable contractual provisions, even if the present majority intends to limit its strict scrutiny and dubious interpretive strategems to cases involving prevailing wage clauses.
NOTES
[*] Editor's Note: This opinion was originally published at 583 So.2d 459. It is published here together with Judge Dennis' September 25, 1991 dissenting opinion.
[1] The Louisiana Associated General Contractors, Inc. is a state wide association of contractors and bidders.
[2] At the time suit was filed, the School Board had already entered into a contract for the construction of a public work known as the De Quincy Middle School. The School Board was scheduled to advertise and receive bids on similar projects between May of 1989 and October of 1989. The plaintiffs sought to enjoin the letting of bids on the other projects as well as the construction of the De Quincy project.
[3] Specifically, the trial court was not satisfied the plaintiffs would be injured prior to a hearing on the merits.
[4] Judge Planchard felt the plaintiffs had an interest, under the circumstances, in having their rights declared by the court.
[5] In stating this conclusion, we hope to clarify the appellate courts' confusion regarding this issue. See generally Davis v. Franklin Parish School Bd., 412 So.2d 1131 (La.App. 2nd Cir. 1982), writ denied, 415 So.2d 942 (La.1982); Pierce v. Board of Supervisors of Louisiana State University, 392 So.2d 465 (La.App. 1st Cir.1980).
[6] Although the parties stipulated the Board's requirement of a prevailing wage rate could lead to higher bid prices, the facts as stipulated do not demonstrate a provable impact on public construction costs.
[7] In support of this proposition, the court cited the following appellate court cases: Smith v. City of Alexandria, 420 So.2d 1329 (La.App. 3rd Cir.1982); Budd Construction Co., Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3rd Cir. 1981), writ denied, 404 So.2d 1262 (La.1981); and Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir.1975).
[8] The Closed Specification Statutes restrict the use of closed product specifications on public projects unless all other products other than the one specified would detract from the utility of the project constructed.
[9] "The legislature shall create parish school boards and provide for the election of their members." La.Const. art. 8 § 9(A). "Parish and city school board systems in existence on the effective date of this constitution are recognized, subject to ... the power of the legislature to enact laws affecting them." La. Const. art. 8, § 10(A).
[10] The Louisiana Supreme Court has subsequently upheld and affirmed the implicit authority of school boards to engage in collective bargaining with teachers. Davis v. Henry, 555 So.2d 457 (La.1990); St. John the Baptist Parish Ass'n of Educators v. Brown, 465 So.2d 674 (La.1985).
[11] Disposal Systems, Inc. v. Calcasieu Parish School Bd., 243 So.2d 915 (La.App. 3rd Cir. 1971).
[12] Shaw v. Caddo Parish School Bd., 347 So.2d 39 (La.App. 2nd Cir.1977), writ denied, 350 So.2d 676 (La.1977).
[13] St. John the Baptist Parish Ass'n of Educators v. Brown, 465 So.2d 674 (La.1985).
[14] As stated earlier, the Public Bid Law is a prohibitory law. If a party's conduct contravenes a prohibitory law, it is void and produces no legal consequences. Badon's Employment, Inc. v. Smith, 359 So.2d 1284 (La.1978).
[15] The purpose behind competitive bidding is: "[T]o provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms." Board of Educators of Chillicothe City School District v. Sever-Williams Co., 22 Ohio St.2d 107, 258 N.E.2d 605, 610 (1970).
[16] See generally J. Weinstein Bldg. Corp. v. Scoville, 141 Misc. 902, 254 N.Y.S. 384 (N.Y.Sup.Ct. 1931) ("Prequalification" of bidders leaves the door "wide open to possible favoritism.").
[17] Because the Public Bid Law provides public entities with an adequate means by which they can insure the quality and responsibility of the bidder who is ultimately awarded the contract, it would not be implausible to conclude that specifications regarding labor are not envisioned or allowed by the Public Bid Law.
[18] The Police Jury was worried about the future availability of parts and service if they accepted the plaintiff's bid.
[19] In support of this argument, the School Board cites cases from other jurisdictions which have held provisions requiring bidders to follow affirmative action plans are not violative of public bid laws in which awards must be to the "lowest responsible bidder." M.C. West Inc. v. Lewis, 522 F.Supp. 338 (M.D.Tenn.1981); Central Alabama Paving, Inc. v. James, 499 F.Supp. 629 (M.D.Ala.1980); S.N. Nielsen Co. v. Public Bldg. Comm'n of Chicago, 81 Ill.2d 290, 43 Ill. Dec. 40, 410 N.E.2d 40 (1980); Southwest Washington Nat'l Elec. Contractors Ass'n v. Pierce County, 100 Wash.2d 109, 667 P.2d 1092 (1983).
[20] Police power is the power of a governmental body to impose laws and regulations which are reasonably related to the protection or promotion of a public good such as health, safety or welfare. City of Shreveport v. Restivo, 491 So.2d 377 (La.1986) (citing City of Shreveport v. Curry, 357 So.2d 1078, 1079 (La.1978)).
[21] A parish school board is a quasi-municipal corporation, and is governed by rules applicable to strict municipalities. Board of Education of Louisville v. Society of Alumni of Louisville Male High School, Inc., 239 S.W.2d 931, 934 (Kent.Ct. App.1951). See also, 2 E.C. Yokley, Municipal Corporations § 385 (1957).
[22] The title or preamble of an act may be used to determine legislative intent. Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610, 614 n. 6 (La.1990); State v. Madere, 352 So.2d 666, 668 (La.1977).
[23] See generally, La.R.S. 38:2233, 2233.1 and 2233.2.
[24] La.R.S. 38:2233.1.
[25] La.R.S. 38:2225.1.
[26] Because construction has been completed on the De Quincy project only, the plaintiffs' request for injunctive relief may not be moot. Cf. Anderson v. Kennedy, 264 N.W.2d 714 (S.D.1978) (Where bids were opened and accepted by a school board for the construction of an auditorium and taxpayers sought and were denied an injunction to halt such construction, and pending an appeal from the lower court action, the auditorium was completed, the Supreme Court of South Dakota held that although the trial court may have erred in failing to grant the requested injunctive relief, the issue had become moot.) As we understand it, several projects are presently under construction and the final phase of the School District No. 22 projects involving renovations to LaGrange High School have only been let for public bidding at this time.